### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

DR. JEROME CORSI et al,

                            Plaintiffs,

  v.                                    **Civil Action No. 19-cv-1573-TJK**

MICHAEL CAPUTO et al,

                            Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MICHAEL CAPUTO'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION AND RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM**

Dated: June 6, 2019

      Respectfully submitted,

                                    /s/ *Stephen C. Leckar*
                                    Stephen C. Leckar
                                    Kalbian Hagerty LLP
                                    888-17th St., NW
                                    Tenth Floor
                                    Washington, D.C. 20006
                                    Direct: 202 419 3286
                                    Fax: 202 223 6625
                                    sleckar@kalbianhagerty.com

## Preliminary Statement

On April 8, 2019, Plaintiffs Dr. Jerome Corsi and Larry Klayman, Esq. filed the subject Complaint alleging that Defendants Michael Caputo and Roger Stone defamed Plaintiffs. Pursuant to Federal Rules of Civil Procedure 12(b)(2) and12(b)(6), Mr. Caputo moves to dismiss the Complaint.  As detailed below, this Court lacks personal jurisdiction over Mr. Caputo, a resident of New York State, who neither committed a tortious act in this District (*see* § 13-423(a)(3)), nor conducts substantial business in this District, engages in persistent conduct in this District, or derives substantial revenue from services rendered in this District (*see* § 13-423(a)(4)).  Moreover, Plaintiffs have failed to state a claim upon which relief can be granted.  Accordingly, Mr. Caputo respectfully submits that this Court must dismiss the Complaint in its entirety.

## Argument

### I.       This Court lacks personal jurisdiction over Mr. Caputo.

Plaintiffs fail to state with specificity the grounds that establish this Court's personal jurisdiction over Mr. Caputo in violation of Rule 8(a)(1) [General Rule of Pleading], which requires "a short and plain statement of the grounds for the court's jurisdiction…."  Consequently, Mr. Caputo is left to assume that Plaintiffs are relying upon the District of Columbia Long-Arm Statute, § 13-423 [Personal jurisdiction based upon conduct], and the two provisions that authorize personal jurisdiction in torts claims, namely, subsections (a)(3) and (a)(4).[1]  Indeed, Plaintiffs concede that Mr. Caputo "is a citizen of New York" State. Complaint, ¶3.

---

[1] Conceivably, Plaintiffs may argue in favor of personal jurisdiction under subsection (a)(1) – "transacting any business in the District of Columbia." But this Court should decline to construe subsection (a)(l)'s "transacting business" provision to authorize personal jurisdiction in tort cases where it would not otherwise be authorized by the tort provisions in subsections (a)(3) and (a)(4). *Alkanani v. Aegis Def Servs., LLC,* 976 F. Supp. 2d 13, 27 (D.D.C. 2014).

District of Columbia Long-Arm Statute, § 13-423(a)(3) and (a)(4) provide:

A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's – (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or] (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from … services rendered, in the District of Columbia ….

To establish long-arm jurisdiction here, Plaintiffs must show that it is both authorized by § 13-423 and consistent with due process. *E.g., Holder v. Haarmann & Reimer Corp.,* 779 A.2d 264, 269 (D.C. 2001).  Plaintiffs cannot make either showing.

    a.  **Mr. Caputo did not commit a tortious *act* in the District under § 13-423(a)(3).**

Plaintiffs are attempting to advance a theory that this Court has jurisdiction over the alleged tortious *act* because the MSNBC news segment aired in this District. *See* Complaint, ¶37 ("Defendant Caputo published malicious, false, misleading and defamatory statements of and concerning Plaintiffs … *in this judicial district*…")(emphasis added); *see also* Complaint, ¶43 ("These false, misleading and defamatory statements were published on television and on the internet and published and republished elsewhere *in this district*…")(emphasis added).  But this attempt to establish personal jurisdiction must fail because the alleged *act* did not occur in this district, but rather occurred in New York State. Indeed, Plaintiffs' specific allegation against Mr. Caputo is that "[o]n or about March 29, 2019, Defendant Caputo appeared on MSNBC with host Ari Melber, where Mr. Caputo made several false, misleading and defamatory statements in this district, nationally and internationally regarding Plaintiffs (the 'MSNBC Video')." Complaint, ¶30.  However, Melber's broadcast is undisputedly produced in Manhattan, and when Mr. Caputo appeared on Melber's broadcast on March 29, 2019, he was in Manhattan, not this District. *See* Exhibit 1, Affidavit of Michael Caputo, ¶14.

In *Moncrief v. Lexington Herald-Leader Co.,* 807 F.2d 217 (D.C.Cir. 1986), where the defendant in Kentucky published and mailed a newspaper that allegedly defamed the plaintiff in the District, the D.C. Circuit Court found no basis for jurisdiction under subsection (a)(3). Similarly, in *McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C.Cir. 1996), the same Court found no basis for jurisdiction under subsection (a)(3) where the defendant who authored the allegedly defamatory statements did so in New York, not the District. *Id.* at 1300.  In both cases, the D.C. Circuit Court rejected plaintiffs' argument that jurisdiction is established when the *injury* is in the District, noting that subsection (a)(3) makes a "careful distinction between 'injury' and 'act.'" *Id.* (citing *Moncrief*, 807 F.2d at 220-21).

Here, as in *Moncrief* and *McFarlane*, the allegedly defamatory statements were not made in the District, but rather outside the District in the State of New York.  And as the D.C. Circuit Court established in *Moncrief* and *McFarlane*, Plaintiffs cannot simply allege injury in the District in an effort to establish personal jurisdiction over Mr. Caputo via § 13-423(a)(3). *See also Forras v. Rauf,* 812 F.3d 1102, 1107 (D.C. Cir. 2016)("[P]ublishing defamatory or otherwise tortious statements within the District that were made outside the District falls short of what subsection (a)(3) requires.")  Therefore, this Court does not have personal jurisdiction over Mr. Caputo under subsection (a)(3).

**b.  Mr. Caputo does not have sufficient contacts to the District under § 13-423(a)(4).**

Plaintiffs cannot establish personal jurisdiction under § 13-423(a)(4) either.  In addition to the alleged injury, subsection (a)(4) requires Plaintiffs to demonstrate sufficient contacts to the District, including activities of a "continuous nature." *Parsons v. Mains*, 580 A.2d 1329, 1330 (D.C. 1990).  The Complaint fails to do so because Mr. Caputo does not have sufficient, continuous contacts to the District.

The D.C. Court of Appeals' decision in *Parsons* illustrates the ongoing, substantial nature of the contacts necessary to satisfy subsection (a)(4). The plaintiff there sued for breach of contract and conversion. *Id.* at 1329. The plaintiff asserted personal jurisdiction over the defendant, a Virginia attorney, based on subsection (a)(4). *Id.* The defendant attorney had previously entered appearances, as counsel, in three cases in the District. *Id.* at 1330. Two of the prior cases in which defendant had appeared were pending at the time of the plaintiff's suit. *Id.* Moreover, in at least two of those cases, the defendant was lead counsel. *Id.* The Court in *Parsons* nonetheless held that the defendant's contacts did not satisfy subsection (a)(4). *Id.* Although the defendant attorney in that case had made appearances in multiple cases in the District, his contacts fell short of the "continuous and persistent course of business" that subsection (a)(4) requires. *Id.*

Mr. Caputo has even fewer connections to the District than *Parsons* did. Indeed, the allegations within the Complaint are replete with conclusory, tenuous, and sometimes misleading attempts to connect Mr. Caputo to D.C. For instance, in Paragraph 5, Plaintiffs allege that Mr. Caputo "has worked on numerous presidential and other political campaigns in the District of Columbia," but fails to give any specifics, including whether Mr. Caputo was present in the District while working on those campaigns. In similar fashion, paragraph 6 alleges that Mr. Caputo "worked with Presidents Ronald Regan [*sic]* and George H.W. Bush," but fails to provide any specific dates or times when Mr. Caputo actually worked in D.C, erroneously assuming that any connection to a former President is sufficient. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (Jurisdictional analysis "looks to the defendant's contacts with the forum … itself, not the defendant's contacts with persons who reside there."). Indeed, while working on the Reagan Campaign, Mr. Caputo was in New York State. Exhibit 1, ¶11. In paragraph 7, Plaintiffs allege

that "[m]ost recently, Defendant Caputo served as an advisor to President Donald Trump during the 2016 presidential election," but omits that Mr. Caputo did so in his capacity as Communications Director for President Trump's 2016 *New York State* Campaign, working mostly from Trump Tower in Manhattan and from his home near Buffalo, New York. Exhibit 1, ¶12. Notably, Mr. Caputo left the Campaign in June 2016. *Id, ¶13*. And in paragraph 10, Plaintiffs allege that Mr. Caputo "does substantial business in the District of Columbia and derives a significant portion of his income from the District of Columbia," a false statement in every respect. *Id., ¶5*-7. Throughout the Complaint, Plaintiffs attempt to advance a conclusory theory that Mr. Caputo "is working in concert with, and at the direction of" Mr. Stone (*see* Complaint, ¶30), a political consultant "centered around" the District (*see* Complaint, ¶15), with no factual basis to support such a claim. Nonetheless, no interpretation of subsection (a)(4) allows for personal jurisdiction based upon Mr. Caputo's friendship with Mr. Stone (*see* Complaint ¶11), a Florida resident who sometimes works in the District. Accordingly, Plaintiffs fail to establish jurisdiction under subsection (a)(4) as well.

Notably, this is not Mr. Klayman's first time filing a defamation suit in which the defendant has a tenuous connection to the District. In *Forras v. Rauf*, 812 F.3d 1102 (D.C. Cir. 2016),[2] another case in which Mr. Klayman was a plaintiff, Mr. Klayman and his previous co-plaintiff brought a defamation action against a New York resident whose statement was published in the *New York Times*. In affirming the District Court's dismissal, Circuit Judge Millett wrote, "[t]he statute [§ 13-423(a)(4)] requires both an injury inside the District, and that 'the defendant engages in some persistent course of conduct or derives substantial revenue from the District.'" *Forras,*

---

[2] Klayman first filed that action in the Superior Court, *Vincent Forras & Larry Klayman v. Iman Feisal Abdul Rauf & Adam Leitman Bailey*, Civil Action No. 0008122-11 (Hon. Todd E. Edelman, J.), but voluntarily dismissed the action and re-filed in Federal District Court. *Forras,* 812 F.3d at 1104.

812 F.3d at 1107-08 (*citing Moncrief*, 807 F.2d at 221).   The Circuit Court found that "a publication that is circulated throughout the nation, including the District, hardly constitutes doing or soliciting business, or engaging in a persistent course of conduct, *within* the District." *Id.*

Nearly identical circumstances occur in this case.  Plaintiffs' attempt to connect Mr. Caputo to the District because he often appears on nationally syndicated broadcasts is feeble.  Mr. Caputo does not regularly do business in the District, nor does he engage in a persistent course of conduct in the District. Therefore, this Court lacks personal jurisdiction over Mr. Caputo under subsection (a)(4) as well.

    **c.   Due Process forbids the exercise of personal jurisdiction over Mr. Caputo.**

Exercising personal jurisdiction over Mr. Caputo based upon his limited contacts with the District would violate due process because it would not comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). Indeed, Plaintiffs' attempts to tie Mr. Caputo to the District in Paragraphs 5 through 10 of the Complaint are premised on weak and untargeted connections. *See Shirlington Limousine & Transp., Inc. v. San Diego Union-Tribune,* 566 F. Supp. 2d 1, 5 (D.D.C. 2008) ("mere operation of an Internet site does not alone subject a defendant to jurisdiction in all fora in which content can be accessed, and plaintiffs must support jurisdictional arguments with more than vague assertions.").

In opposition to this motion, Plaintiffs are likely to invoke *Blumenthal v. Drudge,* 992 F. Supp. 44 (D.D.C. 1998). However, personal jurisdiction in this case is not supported by  the federal district court's decision in that case, which involved a statement published on the Internet by defendant Matt Drudge. *Id.* at 46. As the D.C. Court of Appeals explained, the federal district court in *Drudge* "did not rest its decision

solely on the fact that the defamatory story [on the internet] was available to or directed at District of Columbia residents. Instead, it concentrated on the additional multiple and persistent contacts between the defendant and the forum." *Charlton v. Mand,* 987 A.2d 436, 439 (D.C. 2010). The D.C. Court of Appeals explained:

> Drudge's continuous and persistent contacts with District residents were proven by: (1) the interactivity of the  web site between the defendant Drudge and District residents; (2) the regular distribution of the Drudge Report via AOL, e-mail and the world wide web to District residents; (3) Drudge's solicitation and receipt of contributions from District residents; (4) the availability of the web site to District residents 24 hours a day; (5) defendant Drudge's interview with C-SPAN [inside the District]; and  (6) defendant Drudge's contacts with District residents who provide gossip for the Drudge Report.

*Id.* at 439 n.12. Plaintiffs do not and cannot allege any comparable "continuous and persistent contacts" here.

Similarly, personal jurisdiction is not supported by *Calder v. Jones,* 465 U.S. 783 (1984), in which the Supreme Court concluded that the defendants' intentional and allegedly tortious actions were expressly aimed at the state in which in the Complaint was filed. *Id*. at 789.  The Court in *Calder* stated, "[defendants] knew that the brunt of the injury would be felt by respondent in the State in which she lives and works …" *Id.* at 790.  Here, there is zero evidence that Mr. Caputo targeted the District specifically, despite Plaintiffs' conclusory attempt to connect Mr. Caputo's statements to Mr. Stone's potential jury pool. *See* Complaint, ¶24, 28.

Consequently, Plaintiffs have failed to show that personal jurisdiction over Mr. Caputo is consistent with due process, and therefore, the Complaint must be dismissed.

**II.     Plaintiffs fail to state a claim upon which relief can be granted.**

"[T]he Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.,* 856 F.3d 106, 109 (D.C. Cir. 2017). Doing so "not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Fairbanks v. Roller,* 314 F. Supp. 3d 85, 89 (D.D.C. 2018).

In screening defamation claims under Superior Court Rule 12(b)(6), the Court must "accept the allegations of the complaint as true, and construe all facts and inferences in favor of the  plaintiff." *Solers, Inc. v. Doe,* 977 A.2d 941, 947 (D.C. 2009). But the Court must ignore "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Potomac Dev. Corp. v. District of Columbia,* 28 A.3d 531, 544 (D.C. 2011) (internal quotation marks omitted). The remaining allegations of the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to  relief.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)).

Under District of Columbia law, a defamation claim requires: (1) a false and defamatory statement; (2) published without privilege to a third party; (3) made with the requisite fault; and (4) damages. *Beeton v. District of Columbia,* 779 A.2d 918, 923 (D.C. 2001). The First Amendment requires "public figures" to bear heightened burdens in pleading and proving falsity and fault. *Liberty Lobby, Inc. v. Dow Jones* & Co., *Inc.,* 838 F.2d 1287, 1292 (D.C. Cir. 1988).

Public figures must plead and prove falsity "by at least a fair preponderance of the evidence," with close cases decided against them. *Id.* In addition, public figures must plead and be able to prove by clear and convincing evidence that the defendant's fault constituted "actual malice." *Id.* "Actual malice" means that the defendant made the alleged defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *N. Y. Times v. Sullivan,* 376 U.S. 254, 280 (1964). Reckless disregard, in turn, requires a "high degree of awareness of ... probable falsity." *Garrison v. Louisiana,* 379 U.S. 64, 74 (1964).

Plaintiffs must meet the heightened burdens of pleading and proving falsity and fault because they are public figures. Public figures are people who "have assumed roles of special prominence in the affairs of society." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974)("Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classified as public figures…"). If "an individual voluntarily injects himself or is drawn into a particular public controversy[, he] thereby becomes a public figure…." *Abbas v. Foreign Policy Group, LLC,* 975 F.Supp.2d 1, 7 (D.D.C. 2013)(*quoting Gertz,* 418 U.S. at 351). In 2014, a federal district held that Mr. Klayman was a public figure "[b]ecause of [his] notoriety and high-profile work in the public realm…" *Klayman v. Judicial Watch, Inc.,* 22 F. Supp. 3d 1240 (S.D. Fla. 2014); *accord* Klayman v. Judicial Watch, Inc., 628 F. Supp. 2d 112, 153 (D.D.C. 2009). Mr. Klayman's self-description in the current case implies that he retains that status. Complaint, ¶2 ("Plaintiff Larry Klayman is an attorney and public interest advocate, author, columnist, syndicated radio talk show host ('Special Prosecutor with Larry Klayman' on Radio America) and private attorney who practices and writes and broadcasts in this district and nationally). Similarly, the Complaint establishes that

Plaintiff Corsi is also a public figure (Complaint, ¶1 ("Plaintiff Dr. Jerome Corsi is an author and political commentator who publishes works in this judicial district and nationwide."); Complaint, ¶34 ("well-known conservative figures [*sic*]")) who was the topic of conversation on a nationally syndicated television show on March 29, 2019. *See Braden v. News World Commc'ns, Inc.*, No. CA-10689'89, 1991 WL 161497, at *1 (D.C. Super. Ct. Mar. 1, 1991) (Court labels cable news political commentator a public figure).  He was the topic of conversation on a nationally syndicated television show because Mr. Corsi has voluntarily injected himself into the media throughout the time period of the Mueller Investigation.[3]

Plaintiffs cannot meet their heightened burden with the two specific defamatory statements alleged (previously omitted language now included in bold):

1. "[T]he Mueller team finds themselves at the end of the hallway … and they're staring at Jerry Corsi, who believes the most wild conspiracies in the world**, Roger Stone, and Randy Credico who wears women's underwear … and** they end at the freak show tent." Complaint, ¶31.

2. "[H]e could be the luckiest man in the world.  I think he should buy a lottery ticket or ten.  I'm surprised. I also believe that it indicates that Corsi gave them information that they were looking for, probably on Roger Stone.  We'll probably see him brought in as a witness in Roger Stone's trial. Complaint, ¶32.

a. **Mr. Caputo's first comment was not defamatory because it was rhetorical hyperbole.**

"[I]f it is plain that a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Guilford Transp. Indus. v. Wilner,* 760 A.2d 580, 597 (D.C. 2000).

---

[3] *See e.g.* https://www.youtube.com/watch?time_continue=246&v=lxktpvl5fjY

Moreover,

> the First Amendment provides protection for "statements that cannot 'reasonably [be] interpreted as stating actual facts about an individual." *Milkovich* [*v. Lorain Journal Co.,* 497 U.S. 1, 20, 110 S.Ct. 2695 (1990)] (quoting *Hustler Magazine v. Falwell,* 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988)). In deciding whether a reasonable factfinder could conclude that a statement expressed or implied a verifiably false fact about appellant, the court must consider the statement in context. *Moldea* [*v. New York Times Co.*,] *II,* 22 F.3d [310] at 313–15 [(D.C.Cir. 1994)]. "This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695 (quoting *Hustler Magazine,* 485 U.S. at 53–55, 108 S.Ct. 876).

*Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001).

Mr. Caputo's first statement is pure conjecture, surmise, and rhetorical hyperbole. Indeed, the statement was made in conjunction with Mr. Caputo's comment about Randy Credico wearing women's underwear during a political exchange, and no reasonable factfinder could interpret this as stating an actual fact. In *Greenbelt Cooperative Publishing Assn., Inc. v. Bresleer,* 398 U.S. 6, 90 (1970), the Supreme Court held that a local news reporter's characterization of a real estate agents negotiations during heated public meetings as "blackmail" was not defamatory because "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole…." *See also Letter Carriers v. Austin,* 418 U.S. 264, 284-86 (1974)(use of the word "traitor" in literary definition of a union "scab" not basis for a defamation action under federal labor law since used "in a loose, figurative sense" and was "merely rhetorical hybperbole, a lusty and imaginative expression of the contempt felt by union members"). Here, even the most careless viewer could not have believed that Mr. Corsi was part of an actual freak show alongside Mr. Stone and Randy Credico wearing women's underwear. Mr. Caputo's comment is the exact "imaginative expression" and "rhetorical hyperbole" contemplated by the Supreme Court several times over.

**b. Mr. Caputo's second comment was likely an accurate opinion.**

A public figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 775 (1986). Here, Plaintiffs cannot demonstrate that the second statement is false, or that Mr. Caputo made the statement with knowledge that it was false or with reckless disregard of whether it was false or not. Indeed, it is common knowledge that Government officials interviewed Mr. Corsi as part of the Mueller Investigation, in part because he discussed his interviews on MSNBC on or about January 23, 2019.[4] During his MSNBC interview, Mr. Corsi stated that Government officials primarily asked him about Roger Stone.[5] Given the facts that Government officials interviewed Mr. Corsi, Government officials primarily asked Mr. Corsi about Roger Stone, Mr. Corsi testified in Mueller's grand jury,[6] and Mr. Corsi appeared as Person 1 in Roger Stone's Indictment (Complaint, ¶26), it is indeed probable that Mr. Corsi will be a witness in Mr. Stone's upcoming trial. Stated differently, Mr. Caputo's comment is likely accurate.

Moreover, as evidenced by Mr. Caputo's use of "I believe" and "probably," Mr. Caputo was clearly stating an opinion. Importantly, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695 (*Hepps,* 475 U.S. 767 (1986)); *see also Moldea v. New York Times Co.*, 15 F.3d 1137, 1145 (D.C.Cir. 1994)(Such statements are not actionable in defamation "[b]ecause the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts."). In this particular high-profile matter, namely, the

---

[4] https://www.youtube.com/watch?time_continue=246&v=lxktpvl5fjY.  Beginning at 4:54, Mr. Corsi directly states that he spoke to the FBI and Mueller Prosecutors.
[5] *Id.* at approximately 9:00.
[6] *Id.* at 5:11.

Mueller Investigation, Mr. Caputo is entitled to his likely accurate opinion under the First Amendment.

Lastly, to be defamatory, a statement "must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Coles,* 881 F. Supp. at 33 (quoting *Fleming v. AT&T Information Servs., Inc.,* 878 F.2d 1472, 1475-76 (D.C. Cir. 1989)). Here, Plaintiffs' allegation is that as a result of Mr. Caputo's statement, Mr. Caputo has "create[d] the false implication that Plaintiffs are not true conservatives and supporters of President Trump …." Complaint, ¶35; *see also* ¶48.  Mr. Caputo's comment in no way makes Mr. Corsi appear "odious, infamous, or ridiculous."

Indeed, Plaintiffs cannot demonstrate by clear and convincing evidence that Mr. Caputo made the two alleged comments with actual malice.  Therefore, Plaintiffs fail to state a claim upon which relief can be granted.

### Conclusion

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Defendant Michael Caputo respectfully request that this Court dismiss the Complaint in its entirety.

Dated: June 6, 2019
          Buffalo, New York

**Oral Hearing Requested.**

/s/ *Stephen C. Leckar*
Stephen C. Leckar
Kalbian Hagerty LLP
888-17th St., NW
Tenth Floor
Washington, D.C. 20006
Direct: 202 419 3286
Fax: 202 223 6625
sleckar@kalbianhagerty.com

## CERTIFICATE  OF SERVICE

I hereby certify that on June 6, 2019, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

Respectfully submitted,

/s/ *Stephen C. Leckar*
Stephen C. Leckar
Kalbian Hagerty LLP
888-17th St., NW
Tenth Floor
Washington, D.C. 20006
Direct: 202 419 3286
Fax: 202 223 6625
sleckar@kalbianhagerty.com