# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. JEROME CORSI, *et al* <br><br> Plaintiffs <br><br> v. <br><br> MICHAEL CAPUTO, *et al* <br><br> Defendants. | Case Number:   1:19-cv-1573 |

## PLAINTIFFS' OPPOSITION TO DEFENDANT ROGER STONE'S MOTION TO <u>DISMISS</u>

Dated:  June 12, 2019

Respectfully Submitted,

  */s/ Larry Klayman*
Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
D.C.  Bar Number: 334581
2020 Pennsylvania Ave NW #800
Washington, DC, 20006
Telephone:  (310)-595-0800
Email: leklayman@gmail.com

*Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

LEGAL ARGUMENT ................................................................................................................2

   This Court May Properly Exercise Personal Jurisdiction Over Defendant Stone .......................2

      The District of Columbia Long Arm Statute ..........................................................................3

      Due Process Clause ................................................................................................................7

   Defendant Stone's "Agency" Argument is a Red Herring ............................................................8

   Defendant Stone's Motion to Dismiss Under Rule 12(b)(6) Must Be Denied ..........................10

      Legal Standard ......................................................................................................................10

      Plaintiffs Properly Pled Claims for Defamation and Defamation by Implication .................12

CONCLUSION..........................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................10

*Abraham v. Baldwin*, 42 So. 591, 592 (Fla. 1906) ..................................................................11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ............................................................8

*Covey Run, LLC v. Wash. Capital, LLC*, 245 F. Supp. 3d 9 (D.D.C. 2017) ...........................2, 6

*Devincci Salah Hourani v. Mirtchev*, 796 F.3d 1 (D.C Cir 2015) ...........................................12

*Dooley v. United Techs. Corp.*, 786 F. Supp. 65 (D.D.C. 1992) .............................................10

*Dimick v. Schiedt*, 293 U.S. 474 (U.S. 1935) .........................................................................11

*Glynn v. City of Kissimmee*, 393 So. 2d 774 (Fla. 5th DCA 1980) .........................................11

*Gordon v. United States Capitol Police*, 778 F.3d 158 (D.C. Cir. 2015) ..........................10, 13

*GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) ...........................2

*Hourani v. PsyberSolutions LLC*, 164 F. Supp. 3d 128 (D.D.C. 2016) ....................................7

*Keeton v. Hustler, Inc.*, 465 U.S. 770 (1984) ...........................................................................7

*Saucier v. Countrywide Home Loans*, 64 A.3d 428 (D.C. 2013) .............................................9

*Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539 (M.D. Fla. 1993) .............................11

*Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001) ..............................................11

**Statutes**

Fed R. Civ. P 12(b)(6) ........................................................................................................10, 11

D.C. Code § 13-423(a) ............................................................................................................3

**MEMORANDUM OF LAW**

I.  **INTRODUCTION**

This case is centered around Defendant Roger Stone's ("Defendant Stone") last-ditch efforts, albeit illegal, to avoid prison time for his role Special Counsel Robert Mueller's Russian collusion investigation, for which he was indicted on seven separate felony charges and has a pending criminal case in this judicial district. Comp. ¶ 5. Defendant Stone is doing everything that he can to smear, discredit, and threaten Plaintiff Jerome Corsi, who was Person 1 in his indictment and who will likely be subpoenaed and called as a material witness at Defendant Stone's upcoming criminal trial in this district, and his counsel, Plaintiff Klayman. Comp. ¶ 16.

To that end, Defendant Stone has made numerous false, malicious, and defamatory statements in public in order to try to improperly influence, tamper with and corrupt Mr. Mueller's investigation and now prosecution, which again, is centered in this judicial district. Comp. ¶ 20, 21. Defendant Stone is now working in concert with Defendant Michael Caputo ("Defendant Caputo"), his close personal friend, mentee and surrogate to try to discredit and defame Plaintiffs. Comp. ¶ 11. Defendants broadcasting in this district and to the world that Plaintiff Corsi cannot be trusted in order to prepare for the fact that he will likely be called as a material witness in Defendant Stone's upcoming criminal trial. By maliciously defaming Plaintiff Corsi and his counsel Plaintiff Klayman now, Defendants hope to instill some doubt regarding Plaintiff Corsi's credibility into the minds of those involved in Defendant Stone's criminal prosecution – including prospective jurors – as well as the public at large for public relations reasons as well as to raise money for Stone's legal defense fund.

Much of Defendant Stone's argument is that this Court cannot exercise personal jurisdiction over him, as he is a "resident" of Florida. This is a truly baffling and bizarre

1

assertion. Defendant Stone has had, and continues to have, a decades-long career as a lobbyist and political consultant, doing substantial business in this district, and was part of President Trump's campaign team, and later as an "informal advisor." Comp. ¶ 13. It simply follows logically that anyone in Defendant Stone's lobbying and political influence peddling profession necessarily works primarily in Washington D.C, the nation's capitol, and where each and every federal politician and government agency as well as Congress and The White House is situated. It is where law is made and administered to, which as set forth below, explains why he founded a lobbying firm in the Washington D.C. area in the 1980's, not coincidentally with another criminal defendant in the Mueller probe, Paul Manafort; Black Manafort Stone and Kelly. He thus does substantial business here and may be hailed into a District of Columbia court. Put simply, Defendant Stone's ties to this judicial district are pervasive and this Court has more than adequate grounds to exercise personal jurisdiction, as set forth in detail below. In this regard, Plaintiff Klayman has attached a sworn affidavit as <u>Exhibit 1</u> with regards to this Court's personal jurisdiction over Defendant Stone.

## II      LEGAL ARGUMENT

### A.      This Court May Properly Exercise Personal Jurisdiction Over Defendant Stone

This Court may exercise personal jurisdiction over Defendant Stone if Plaintiffs satisfy the District of Columbia Long Arm Statute and the Due Process Clause of the U.S. Constitution. *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Crucially, Plaintiffs need only satisfy the burden of establishing the factual basis for asserting personal jurisdiction with a *prima facie* showing. *Covey Run, LLC v. Wash. Capital, LLC*, 245 F. Supp. 3d 9, 13 (D.D.C. 2017). As such, "plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial[;] but rather, the plaintiff

may rest her arguments on the pleadings, bolstered by such affidavits and other written materials as [he] can otherwise obtain." *Id*. (internal quotations omitted). Furthermore, any "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Id*. at 17.

### 1. The District of Columbia Long Arm Statute

The District of Columbia Long Arm Statute is satisfied here under two grounds: (1) Defendant Stone transacts business in the District of Columbia under D.C. Code § 13-423(a)(1) and (2) Defendant Stone caused "tortious injury in the District of Columbia by an act or omission outside the District of Columbia [and] he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia under D.C. Code § 13-423(a)(4). Importantly, under the express terms of the District of Columbia Long Arm Statute, the Court may exercise personal jurisdiction stemming not only from the Defendant's personal actions, but also those acting on behalf of the Defendant. ("A District of Columbia Court may exercise personal jurisdiction over a person, who acts directly <u>or by an agent</u>…."

It is clear that Defendant Stone regularly conducts business in the District of Columbia. The Complaint alleges that:

> Defendant Stone has had, and continues to have, a decades-long career as a lobbyist and political consultant before various federal agencies, Congress, and The White House, and was part of President Trump's campaign team and then was an "informal advisor." Comp. ¶ 13.

> Defendant Stone derives a substantial portion of his income from his services rendered in the District of Columbia. Comp. ¶ 14.

> Defendant Stone' professional conduct, as a political consultant and lobbyist, is primarily, if not entirely centered around the District of Columbia, which is the nation's capitol and, obviously where The White House and Capitol Hill are located. Comp. ¶ 15.

Furthermore, in his indictment by Special Counsel Mueller and his team of prosecutors, which is

attached to the Complaint as an exhibit and incorporated therein by reference, Stone is a "political consultant who worked for decades in U.S. politics and on U.S. political campaigns." Comp. Ex. 1 at 2. Defendant Stone was an "official on the U.S. presidential campaign of Donald J. Trump…until in or around August 2015, and maintained regular contact with and publicly supported the Trump Campaign through the 2016 election. *Id*. Furthermore, Defendant Stone was one of the principal founders of and a full partner in Black, Manafort, Stone and Kelly, a lobbying firm based in Washington, D.C. After a series of mergers, the lobbying group founded by Stone now does business as Prime Policy Group, which is still located in the Washington D.C. area. Furthermore, the Complaint alleges:

> Defendant Stone has also used and continues to employ surrogates, either out in the open or secretly, to defame Plaintiffs, such as Defendant Caputo. Other surrogates known to be used by Defendant Stone include Alex Jones and J. Owen Stroyer of InfoWars, Cassandra Fairbanks, Tucker Carlson of Fox News, and reporter Chuck Ross of The Daily Caller which not coincidentally was founded by Tucker Carlson and on information and belief continues to have an ownership interest, to name just a few. Comp. ¶ 26.

As set forth above, the D.C. Long Arm Statute allows for personal jurisdiction based upon conduct of the Defendant's agents or "surrogates" which Defendant Stone is notorious for using. Indeed, in a recent order by the Honorable Amy Berman Jackson ("Judge Jackson"), who is presiding over Defendant Stone's criminal case – also in this judicial district – Judge Jackson herself referenced Defendant Stone's frequent use of surrogates:

> Furthermore, the defendant may not comment publicly about the case indirectly by having statements made publicly on his behalf by surrogates, family members, spokespersons, representatives, or volunteers. Comp. Ex. 2

The Court may take judicial notice of this order, as a matter of public record.

      Here, the entire Complaint is centered around Stone's use of a surrogate, namely co-Defendant Michael Caputo, to cause tortious injury to Plaintiffs:

4

>Defendant Caputo is now working in concert with self proclaimed "dirty trickster" and at best "Mafia admirer," if not actual Mafia connected Defendant Stone, who was recently indicted on seven felony charges by Special Counsel Robert Mueller ("Mueller Indictment") as part of his "Russian Collusion" investigation and now prosecution for the alleged crimes of perjury, witness tampering and obstruction of justice. Comp. ¶ 16.
>
>By defaming Dr. Corsi and Mr. Klayman, Defendants Caputo and Stone - acting in concert as joint tortfeasors, are hoping to not only intimidate Dr. Corsi and his counsel Mr. Klayman to severely harm and damage their reputations, but also to coerce and threaten Dr. Corsi to testify falsely if subpoenaed to be called as a material witness in Stone's ensuing criminal trial.  The are also actively intimidating, coercing, and threatening Dr. Corsi's legal counsel, Plaintiff Klayman, and thus destroying his reputation, standing and ability to practice law and conduct other professional and personal endeavors in this district in particular. They are also trying divert funds away from Dr. Corsi's legal defense fund, while boosting Defendant Stone's legal defense fund. Defendant Corsi's legal defense fund is intended to pay legal fees and costs to Plaintiff Klayman for his services. Comp. ¶ 23

It is therefore clear that Stone's professional conduct, as a political consultant, lobbyist, and self-styled "dirty trickster" is primarily centered around the District of Columbia, which is the nation's capitol and, obviously, where The Trump White House and Capitol Hill are located. Comp. ¶¶ 13-15. Thus, at a bare minimum, it is clear that Defendant Stone "transacts business in the District of Columbia," therefore satisfying the D.C. Long Arm Statute. Comp. ¶¶ 13-15. It is also clear that Defendant Stone does not work for free. He therefore derives a substantial portion of his income from his services rendered in the District of Columbia, Comp. ¶¶ 13-15, again satisfying the D.C. Long Arm Statute. Tellingly, Special Counsel Robert Mueller found it appropriate to indict Defendant Stone on seven separate felony charges in Washington D.C., not in the Southern District of Florida, where he merely resides. Comp. ¶ 16. Defendant Stone's criminal case is also ongoing in Washington D.C. before the Honorable Amy Berman Jackson.

Importantly, Defendant Stone does not merely conduct substantial business and services in the District of Columbia – Plaintiffs' injuries are also directly related to these business

activities in this district. *See Covey Run*, 245 F. Supp. 3d at 17 ("When considering whether to exercise personal jurisdiction pursuant to this section of the District's long-arm statute, "the Court must answer two questions: whether the defendant has 'transacted business,' and whether the plaintiff's injury arises from that business.") The defamatory conduct pled in the Complaint is aimed at influencing the Mueller investigation and now prosecution. Comp. ¶ 21. It is alleged in the Complaint that the reason for Defendant Stone's tortious conduct alleged herein is his criminal indictment in Special Counsel Robert Mueller's Russian collusion investigation, where his indictment stemmed from his actions as a political consultant and lobbyist to President Trump in Washington D.C. As pled in the Complaint:

> Defendant Stone knew that he was going to be indicted, and therefore began this public relations campaign to smear, defame, intimidate and threaten Plaintiff Corsi, even before his actual indictment on January 25, 2019, in order to try to influence public opinion and Special Counsel Robert Mueller – by trying to attribute guilt to Plaintiff Corsi and not him - as well as to try to raise money for his legal defense. Comp. ¶ 21.

> By defaming Dr. Corsi and Mr. Klayman, Defendants Caputo and Stone - acting in concert as joint tortfeasors, are hoping to not only intimidate Dr. Corsi and his counsel Mr. Klayman to severely harm and damage their reputations, but also to coerce and threaten Dr. Corsi to testify falsely if subpoenaed to be called as a material witness in Stone's ensuing criminal trial.  The are also actively intimidating, coercing, and threatening Dr. Corsi's legal counsel, Plaintiff Klayman, and thus destroying his reputation, standing and ability to practice law and conduct other professional and personal endeavors in this district in particular. They are also trying divert funds away from Dr. Corsi's legal defense fund, while boosting Defendant Stone's legal defense fund. Defendant Corsi's legal defense fund is intended to pay legal fees and costs to Plaintiff Klayman for his services. Comp. ¶ 23.

There is, therefore, more than a direct causal link between Defendant Stone's substantial and ongoing business in this judicial district as a political consultant and lobbyist, and Plaintiffs' injuries as set forth in the Complaint. Thus, Plaintiffs satisfy the D.C. Long Arm Statute.

///

///

2.      **Due Process Clause**

In addition to complying with the D.C. Long Arm Statute, the exercise of personal jurisdiction over Defendant Stone in this district comports with all necessary due process requirements. "Due process is satisfied if the defendant's 'minimum contacts' with the District are such that subjecting it to suit would not offend traditional notions of fair play and substantial justice. *Id*. at 18 (internal quotations and citations omitted). "Under the 'minimum contacts' standard, courts must insure that 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id*.

Importantly, the U.S. Supreme Court case of *Keeton v. Hustler, Inc*., 465 U.S. 770 (1984), the plaintiff was a resident of New York, who brought a defamation case in New Hampshire against the defendant magazine, which was an Ohio corporation. *Id*. at 772. The only connection that the defendant had to New Hampshire was that the magazine had circulation in New Hampshire. *Id*. The U.S. Supreme Court held that the publisher of a national magazine was subject to jurisdiction in every location in which it was circulated, even if "the bulk of the harm done to petitioner occurred outside [the forum]." *Id*. at 780. In addition, in *Keeton*, the only connection necessary that the publisher had to the forum state was the circulation and sale of the publication. It is indisputable that the defamatory statements were published in this judicial district. Comp. ¶ 30, thereby affording the Court personal jurisdiction in this case.

Furthermore, here, the Court has grounds to exercise both general and specific jurisdiction over Defendant Stone. As set forth above, Defendant Stone's profession as a political consultant and lobbyist in Washington D.C. grant him the requisite "continuous and systematic" contacts with this judicial district for general personal jurisdiction. *See Hourani v. PsyberSolutions LLC*, 164 F. Supp. 3d 128, 136 (D.D.C. 2016). Indeed, Defendant Stone's

7

lobbying firm was established in the Washington D.C. area in 1980, and continues to operate in this judicial district under a different name or individually after a series of mergers. Defendant Stone is a longtime political consultant and lobbyist, as well as a self-described "dirty trickster" who even served as an official on President Trump's Presidential campaign team, which against, was in part centered in Washington D.C. Comp. ¶¶ 13- 15. The very nature of his profession requires that his "principal place of business" be in the District of Columbia, which is the nation's capitol and where his clients would necessarily be located.

In the unlikely event that this Court finds no general jurisdiction, it is still abundantly clear that specific jurisdiction exists. A court has specific jurisdiction if (1) the defendant has "purposefully established minimum contacts" with the forum by "purposefully direct[ing]" his activities there and (2) the plaintiff's claims "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). As set forth above, Defendant Stone's tortious conduct is "purposefully directed" at the District of Columbia, in an effort to tamper with and interfere with Special Counsel Mueller's Russian collusion investigation and his indictment in the U.S. District Court for the District of Columbia. *See* Comp. ¶ 21, 123. Plaintiffs' injuries – i.e. being defamed, threatened, and discredited – all arise directly and proximately from Defendant Stone's attempts to illegally influence Special Counsel Mueller's investigation and his criminal indictment.

  **B.** **Defendant Stone's "Agency" Argument is a Red Herring**

Defendant Stone next asserts that this Court lacks jurisdiction because the Complaint did not show an agency relationship between Defendants Stone and Caputo. This is false, as the Complaint clearly and expressly alleges that Defendant Caputo is acting as a surrogate for Defendant Stone, and therefore as his agent. As defined by Merriam Webster, a surrogate is "one

8

appointed to act in place of another."[1] This is exactly the relationship that the Complaint alleges:

> On or about March 29, 2019, Defendant Caputo appeared on MSNBC with host Ari Melber, where he made several false, misleading and defamatory statements in this district, nationally and internationally regarding Plaintiffs (the "MSNBC Video").[2] **This was done in concert with, and at the direction of Defendant Stone** and published in this district, nationally and internationally. Comp. ¶ 30.

These allegations are far from conclusory, as the Complaint even details the longstanding close relationship between Defendant Caputo and Defendant Stone:

> Defendant Caputo and Defendant Roger Stone have a long personal history and friendship, with Defendant Stone having been reported as being a "mentor" to Defendant Caputo. Comp. ¶ 11.

> It was Defendant Stone who convinced Defendant Caputo to leave his work in Russia and join him in Miami and South Florida. Comp. ¶ 12.

Thus, Plaintiffs have properly alleged an agency relationship.

Defendant Stone apparently asserts, however, with absolutely no legal support, that agency is the only way that the Court can exercise personal jurisdiction. This is false. It is well established that co-conspirators are vicariously liable for tortious actions taken in furtherance of the conspiracy. "[L]iability for civil conspiracy depends on performance of some underlying tortious act"; "[civil] conspiracy is not independently actionable; rather it is a means for establishing vicarious liability or the underlying tort." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 446 (D.C. 2013). Furthermore, District of Columbia Courts have exercised personal jurisdiction over co-conspirators:

> In Mandelkorn v. Patrick, 359 F. Supp. 692 (D.D.C. 1973), [**35] the Court held that acts within the forum of one co-conspirator, in furtherance of an alleged conspiracy, subject a nonresident co-conspirator to personal jurisdiction. Mandelkorn involved a District of Columbia resident who claimed

---

[1] https://www.merriam-webster.com/dictionary/surrogate

[2] https://www.msnbc.com/the-beat-with-ari/watch/trump-aide-who-cooperated-bad-things-coming-in-mueller-report-1468136003575

9

> that resident and nonresident defendants conspired to deprive him, and other class members, of free speech, religion, association and travel rights. Although several of the defendants had no direct contacts with Washington, D.C., the Court found that the agency relationship between the co-conspirators was sufficient to extend the Court's long-arm jurisdiction to nonresident defendants where resident defendants committed overt acts within the District. Id. at 695-97. The Court stated, "assuming as true the unchallenged allegations of conspiracy and an overt act in the District of Columbia in furtherance of the conspiracy, this Court sees no injustice in requiring New York and Florida Defendants to submit to suit here." Id. at 696. *Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 78 (D.D.C. 1992).

The Complaint has detailed the overt acts taken by both Defendant Stone as well as Defendant Caputo in furtherance of their conspiracy to discredit, smear, and defame Plaintiffs in order to illegally and improperly try to influence Special Counsel Mueller's Russian collusion investigation. Thus, this Court does not solely rely on the principle of "agency" – although as a matter of fact and law there is an agency in any event -- to exercise personal jurisdiction over Defendant Stone, as he disingenuously asserts.

### C. Defendant Stone's Motion to Dismiss Under Rule 12(b)(6) Must Be Denied

#### 1. Legal Standard

Fed. R. Civ. P. 8(a)(2) states that a pleading need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." When reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must "accept the complaint's allegations as true and draw all reasonable inferences in favor of the non-moving party." *Gordon v. United States Capitol Police*, 778 F.3d 158, 163-164 (D.C. Cir. 2015).

A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotations omitted). As such, a motion to dismiss at this stage

must be decided solely on what Plaintiffs have plead in their complaint, taken as true, and not upon any factual "contradictions" that Defendants have attempted to insert. Involving such weighing of fact would take the standards of pleading to new heights not contemplated before by any Court.

When deciding on a motion to dismiss a claim for defamation, the Court "must assume, as the complaint alleges, the falsity of any express or implied factual statements made in the article." *Weyrich v. New Republic, Inc.,* 235 F.3d 617, 623 (D.C. Cir. 2001). It must also assume that the defamatory statements were made "with knowledge of their falsity or reckless disregard for their truth." Id. In situations where resolution is necessarily fact intensive, like defamation, the U.S. Supreme Court has held that "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (U.S. 1935). As such, it is crucial and required that Plaintiffs be afforded the opportunity to conduct discovery and present its findings to the proper fact-finding body—the jury. In fact, courts have held that even in a summary judgment motion for defamation, taking the matter out of the jury's hands is almost always inappropriate, except in those rare cases where the circumstances surrounding the allegedly defamatory communication are completely undisputed. *See, e.g., Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541 (M.D. Fla. 1993), aff'd, 15 F.3d 1097 (11th Cir. 1994); *Abraham v. Baldwin*, 42 So. 591, 592 (Fla. 1906); *Glynn v. City of Kissimmee*, 393 So. 2d 774. 776 (Fla. 5th DCA 1980). This principle applies even stronger here, where Defendant Stone has not yet entered any evidence on his behalf and where a simple Rule 12(b)(6) motion is at bar. Plaintiffs must, at a minimum, be permitted to conduct discovery.

> 2. **Plaintiffs Properly Pled Claims for Defamation and Defamation by Implication**

Under District of Columbia law, a valid defamation claim must plead only four elements:

> [T]he defendant made a false and defamatory statement concerning the plaintiff"; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault in publishing the statement amounted to at least negligence; and (4) either the statement was actionable as a matter of law irrespective of special harm, or its publication caused the plaintiff special harm.

*Devincci Salah Hourani v. Mirtchev*, 796 F.3d 1, 16 (D.C Cir 2015) (internal quotations omitted).

Defendant Stone makes no argument that the statements pled in the Complaint are not defamatory. His only argument appears to be that Defendant Caputo's statements cannot be attributed to him. This is false, as the Complaint details exactly how and why Defendants are working in concert as joint tortfeasors.

The Complaint details how Defendant Caputo, in concert with and at the direction of Defendant Stone, "made several false, misleading and defamatory statements in this district, nationally and internationally regarding Plaintiffs." Comp. ¶ 30. Tellingly, each of these defamatory statements were directly related to Special Counsel Robert Mueller's Russian collusion investigation, and were made in order to defame, smear and discredit Plaintiffs, while purporting to exonerate Defendant Stone. For instance, Defendant Caputo stated:

> "[T]he Mueller team finds themselves at the of the hallway…and they're staring at Jerry Corsi, who believes the most wild conspiracies in the world…. They end at the freak show tent." Comp. ¶ 31.

> When asked about his thoughts as to why Dr. Corsi was not indicted, Defendant Caputo said, "he could be the luckiest man in the world. I think he should buy a lottery ticket or ten. I'm surprised. I also believe that it indicates that Corsi gave them information that they were looking for, probably on Roger Stone. We'll probably see him brought in as a witness in Roger Stone's trial." Comp. ¶ 32.

The ramifications of these statements are readily apparent. Defendants Stone and Caputo are

broadcasting to the world that Plaintiff Corsi cannot be trusted in order to prepare for the fact that he will likely be subpoenaed and called as a material witness in Defendant Stone's upcoming criminal trial. By maliciously defaming Plaintiff Corsi and his counsel Plaintiff Klayman now, Defendants hope to instill some doubt regarding Plaintiff Corsi's credibility into the minds of those involved in Defendant Stone's criminal prosecution – including prospective jurors – as well as the public at large for public relations reasons and to fill Stone's legal defense fund with contributions.

The Complaint even details exactly <u>why</u> Defendant Caputo and Defendant Stone are working in concert:

> Defendant Caputo and Defendant Roger Stone have a long personal history and friendship, with Defendant Stone having been reported as being a "mentor" to Defendant Caputo. Comp. ¶ 11.

> It was Defendant Stone who convinced Defendant Caputo to leave his work in Russia and join him in Miami and South Florida. Comp. ¶ 12.

Thus, the Complaint sets forth expressly how and why Defendants are working together in concert to maliciously defame Plaintiffs. This is far from conclusory, and satisfies the pleading requirements set forth in *supra* section II(C)1. Indeed, any factual contradiction set forth by Defendant Stone that he was not working in concert with Defendant Caputo must be ignored pursuant to *Gordon*. At a minimum, this case must proceed to discovery, where further evidence of Defendants' collaboration will be uncovered.

### III.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny Defendant Stone's Motion to Dismiss, as he has clearly pled more than sufficient facts in support of causes of action. It is also clear that this Court may properly exercise personal jurisdiction over Defendant Stone, a career lobbyist, political consultant and self styled "dirty trickster" whose

business is focused and centered on Washington D.C. This case must therefore proceed to discovery.

Dated: June 12, 2019                                             Respectfully Submitted,

                                                                    */s/ Larry Klayman*
                                                                 Larry Klayman, Esq.
                                                                 KLAYMAN LAW GROUP, P.A.
                                                                 D.C. Bar Number: 334581
                                                                 2020 Pennsylvania Ave NW #800
                                                                 Washington, DC, 20006
                                                                 Telephone: (310)-595-0800
                                                                 Email: leklayman@gmail.com

                                                                 *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on June 12, 2019

                                                                    */s/ Larry Klayman*
                                                                 Larry Klayman, Esq.