IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No.: 19-cv-1573-TJK

DR. JEROME CORSI et al,

                Plaintiffs,

v.

MICHAEL CAPUTO et al,

                Defendants.

---

## DEFENDANT ROGER STONE'S REPLY TO PLAINTIFF'S OPPOSITION OF STONE'S MOTION TO DISMISS

Defendant Roger Stone respectfully submits this reply in further support of his motion to dismiss. For the reasons stated herein as well as in Stone's Motion, Plaintiff's Complaint must be dismissed.

## PRELIMINARY STATEMENT

Contrary to Plaintiffs' claim that this case is centered around the federal case against Mr. Stone, the cases are completely unrelated. In fact, despite Plaintiffs' attempts to insert themselves in Stone's federal case, Judge Amy Berman-Jackson has refused to allow this and has in fact admonished Plaintiffs for attempting to do so.[1]  Furthermore, Plaintiffs' outlandish claim that

---

[1] *United States v. Stone*, No. 1:19-CR-00018-ABJ, Minute Order dated Feb. 28, 2019 (D.D.C. 2019) ("MINUTE ORDER as to ROGER J. STONE, JR. Two copies of a motion that was entitled "Interested Party and Material Witness's [sic] Dr. Jerome Corsi's Motion For Leave to File Motion for Order to Show Cause to Conduct Evidentiary Hearing..."[Docs.] 47 48 were entered on this docket because counsel designated each for purposes of the court's electronic filing system as an "Amicus Curiae Appearance." The would-be movant is not a party to this action, and the

"Defendant Stone is doing everything he can to smear, discredit, and threaten Plaintiff Jerome

Corsi…and his counsel, Plaintiff Klayman" (Doc. 9 at 1) is completely without merit. Stone is

prohibited from contacting or publicly discussing any potential witnesses that might be called in

his upcoming trial, this necessarily includes Plaintiff Corsi and is in fact prohibited from discussing

his case publicly or instructing others to speak on his behalf per Judge Berman Jackson's Gag

Order, which was issued on Stone has not had any contact whatsoever with Defendant Caputo

since before his arrest on January 24, 2019 and therefore any statements made by Caputo, cannot

in any way be attributed to Stone.[2]   This lawsuit is a paltry attempt by the Plaintiffs' to use Stone's

---

Federal Rules of Criminal Procedure do not permit intervention in a criminal case, so there is no
legal basis to grant him permission to file his motion. The fact that the Court previously granted
the movant leave to file a submission as an amicus curiae with respect to a discrete legal issue then
pending before the Court did not operate to designate the movant as an amicus curiae for all
purposes thereafter, nor did it invite the movant to inform the Court of facts that he wished to bring
to the Court's attention on an ongoing basis. Any legitimate reports alleging threats or tampering
with witnesses, or violations by the defendant of the order that he not contact the movant, should
be made promptly to the prosecution or appropriate law enforcement authorities; the Court's docket
is not the appropriate vehicle to bring matters to their attention. The Court also notes that the fact
that it granted leave to file the amicus brief did not transform counsel for the movant into a "filer"
or counsel for a party with docketing privileges in this case; indeed, counsel seems to be aware of
that restriction since he managed to docket the pleadings only by falsely designating them in the
ECF system as entries of his appearance. Since the pleadings were entered on the docket because
counsel misrepresented the nature of the filings, it is hereby ORDERED that they be stricken from
the record. The motion would not have been granted in any event for the reasons set forth above.
Finally, the Court observes that while there may be individuals with an interest in this matter, a
criminal proceeding is not a free for all. Therefore, it is FURTHER ORDERED that that any
person, including this movant, who seeks leave to file a pleading in this case as an amicus curiae
must file a motion for leave to file the pleading in advance, setting out the information that would
be required under Local Civil Rule 7(o), and that the proposed pleading may not be filed unless
and until permission has been granted. This means that the specific information sought to be placed
on the public record may not be incorporated in the motion requesting permission to file it. Signed
by Judge Amy Berman Jackson on 2/28/19. (DMK) (Entered: 02/28/2019)").

[2] *United States v. Stone*, No. 1:19-CR-00018-ABJ, Minute Order dated Feb. 21, 2019
(D.D.C. 2019) (in relevant part, "…the defendant is prohibited from making statements to the
media or in public settings about the Special Counsel's investigation or this case or any of the
participants in the investigation of the case. The prohibition includes, but is not limited to
statements made about the case through the following means: radio broadcasts; interviews on

federal indictment to their advantage. They cite no comments made by Stone, nor do they demonstrate anything of substance that would lead a Judge to believe their baseless claims that Defendants Caputo and Stone have been in contact, much less involved in an agency relationship. In fact, Plaintiffs' somehow equates a longstanding friendship to a surrogacy relationship based on absolutely no facts to support such a claim.

Plaintiff's assertion that this Court has jurisdiction over Stone simply because decades earlier he worked and lived in Washington, D.C. is meritless. Stone has resided in the State of Florida for *seventeen years*, since he moved there in 2002 after he ended his involvement with his former company in 1991, *twenty-eight years ago*. Indeed, Plaintiff put Stone's Florida address in the caption of the Complaint.

Roger Stone is not a lobbyist and any consulting work he does is based out of Florida. Additionally, it is well known that the headquarters for Donald J. Trump for President for the 2016 election was based in New York, New York, and was domiciled in Virginia, ***not*** in Washington, D.C. as mistakenly stated by Plaintiff in his Opposition on page 2.  *See Cockrum v. Donald J. Trump for President, Inc.*, 319 F.Supp.3d 158, 174 (D.D.C. 2018) ("The Court lacks general jurisdiction over the Trump Campaign, which is incorporated in Virginia and has its principal place of business in New York.").

## REPLY

**I.     This Court Cannot Properly Exercise Personal Jurisdiction Over Stone**

---

television, on the radio, press releases or press conferences; blogs or letters to the editor; and posts on Facebook, Twitter, Instagram, or any other form of social media. Furthermore, the defendant may not comment publicly about the case indirectly by having statements made publicly on his behalf by surrogates, family members, spokespersons, representatives, or volunteers.").

To establish personal jurisdiction, the Plaintiffs must satisfy both the D.C. Long-Arm Statute (D.C. Code § 13-423) and the Due Process Clause. Plaintiffs have failed to meet this relatively low burden. Every alleged factual basis Plaintiffs rely upon in their Complaint and Opposition are simply conclusory statements or bare allegations. As counsel for Plaintiffs is aware, affidavits or declarations can be stricken if not based upon personal knowledge or if they rely on scandalous and impertinent allegations. *See Judicial Watch, Inc., v. U.S. Dept. of Commerce*, 224 F.R.D. 261, 265 (D.D.C. 2004) (affidavits not based on personal knowledge stricken).  Plaintiff Klayman lacks personal knowledge of what he alleges in his declaration; he does not have personal knowledge of Stone's ties to the District of Columbia, of Stone's business activities including where it operates and where it derives its revenue, nor does he have personal knowledge of the scope and duration of Stone's career as a lobbyist.  *See* Decl. ¶¶ 1-11 (Doc. 9-1).  For these reasons, the Court should strike the unsubstantiated assertions pursuant to Rules 12(f) and 56(e) of the Federal Rules of Civil Procedure.

### A.  The D.C. Long-Arm Statute

Plaintiffs' allegations that the D.C. Long-Arm Statute is satisfied under D.C. Code §§ 13-423(a)(1) and 13-423(a)(4) are incorrect.  First and foremost, Stone does not transact business in this District.  Also, D.C. Code § 13-423(a)(1) does not even cover tort cases.  Two of the D.C. Long-Arm Statute's section do apply to torts, §§ 13-423(a)(3) and (a)(4). Consequently, it is improper for Plaintiff to attempt to go around the requirements of the torts-related sections by incorrectly invoking the "transacting business clause." Secondly, he does not regularly conduct "or solicit business" in the District, "engage in any other persistent course or conduct" in the District, nor does he "derive a substantial revenue from goods used or consumed, or services rendered" in this District as required by D.C. Code § 13-423(a)(4).

4

Stone was never an employee of the Donald J. Trump for President campaign. He worked as an independent consultant for a relatively short period of time.  And as previously noted, Trump's campaign headquarters was located in New York, New York and domiciled in Virginia, not in Washington, D.C.; therefore, there is no correlation between Stone's work on the campaign and the forum jurisdiction. *See Cockrum*, 319 F.Supp.3d. 158. Critically, working on a presidential campaign does not equate to soliciting or transacting business in Washington, D.C., nor does it equate to Stone deriving a substantial amount of revenue from services rendered within the District as required by the Long-Arm Statute.

Stone has not worked in Washington, D.C. since at least 1991. Plaintiffs' argument that this Court has personal jurisdiction over Stone because he worked in the District over twenty-seven years ago is legally insufficient. Plaintiffs provides no case law or statutes that support this claim that because someone once worked in the forum state/district, that the state/district can continue to have personal jurisdiction over them in perpetuity.  Stone works as a public affairs consultant, author, and commentator and his business is located in the state of Florida. Plaintiffs also make the assumption that because Stone worked as a lobbyist and is a "self-styled 'dirty trickster'" (*see* Opp. 4-5) that he must transact business in Washington, D.C. This is yet another bare allegation, not based on facts, which is conclusory at best. Not all current or former lobbyists transact business in Washington, D.C., and Plaintiffs have failed to point to any legitimate and tangible business that Stone has done within the territory of D.C. at some point in this millennium.

In regards to Plaintiffs' claims that Stone is using "agents" or "surrogates" to defame them and this "agency" creates personal jurisdiction over Stone likewise has no merit. There are no allegations or supporting statements contained in either Plaintiffs' Complaint or Opposition to support that Stone has actively engaged others to speak on his behalf.

Plaintiffs claim that because a reporter who works for a publication located in Washington, D.C., has potentially had contact with Stone in the past, that this is enough to satisfy the requirements of the D.C. Long-Arm Statute. This is an insufficient connection for purposes of personal jurisdiction and has no legal or factual merit. Mr. Stone has never been an employee of the Daily Caller nor has he ever been paid by the Daily Caller.[3]

Plaintiffs point to the "Gag Order" issued by Judge Berman Jackson on Stone as an attempt at a demonstration Stone uses "henchmen" to do his bidding. However, Judge Berman Jackson made no findings of fact that Stone uses surrogates to intimidate anyone, much less surrogates to intimidate Plaintiffs; the Gag Order is unrelated to Plaintiffs and was initially put in place by Judge Berman Jackson to ensure a fair trial for Stone. *See* Footnote 2 above. Furthermore, gag orders are typically written with broad language so as to prevent parties from circumventing such orders. This claim is clearly conclusory and, therefore, not enough to establish personal jurisdiction over Stone. *See First Chicago Intern v. United Exchange, Co., Ltd.*, 836 F.2d 1375, 1378-1379 (D.C. Cir. 1988) ("It is settled a plaintiff 'must allege specific acts connecting [the] defendant with the forum,' and that the 'bare allegation' of conspiracy or ***agency*** is insufficient to establish personal jurisdiction.") (internal citations omitted and emphasis added).

The claim that because Stone is involved in an on-going criminal case within the District which gives rise to personal jurisdiction in Plaintiffs case is simply unsupported. Stone was not served in the District of Columbia, he was served in Florida – had service been in D.C. there might be an argument for extending personal jurisdiction, but that is simply not the case here. *See*

---

[3] Stone occasionally writes for the Daily Caller with the editorial title of Men's Fashion Editor. *See, e.g.*, Roger Stone, *Roger Stone's 13th Annual International Best and Worst Dressed List, https://dailycaller.com/2019/01/01/stone-best-worst-dressed/*. However, as noted, this is done without pay and not as an employee.

*Burnham v. Superior Court*, 495 U.S. 604 (1990).  Jurisdiction is alleged to be proper in the District for the criminal case because the alleged illegal activity (lying to Congress) occurred while Stone was ***physically present in the District***. Motive is not contemplated by the D.C. Long Arm-Statute as a means of establishing personal jurisdiction. *See* D.C. Code § 13-423.

In addition to incorrectly claiming that Stone satisfies the D.C. Long-Arm Statute because he transacts business in the District, Plaintiffs also attempt to claim that their injuries are directly related to these alleged business activities. Plaintiffs have made absolutely no connection between the alleged defamatory statements made by Caputo to Stone's business, nor have they properly pleaded a connection between the business activities and his purported injuries. The supposedly defamatory statements were not alleged to have been made in Washington D.C.

**B.  Due Process Clause**

"To show that the exercise of jurisdiction would comply with the constitutional requirements of due process, a plaintiff must demonstrate that there are 'minimum contacts between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Cockrum v. Donald J. Trump for President, Inc.,* 319 F.Supp.3d 158, 173 (D.D.C. 2018) (quoting *Swecker v. Midland Power Coop.,* 253 F.Supp.3d 274, 278 (D.D.C. 2017)) (plaintiffs failed to properly allege the District Court of the District of Columbia has personal jurisdiction over Stone). An alleged "motive" (*i.e.*, Plaintiff's assertion that all torts allegedly committed by Stone are part of a bigger conspiracy to influence Mueller's investigation and prosecution) does not establish minimum contacts as required by due process. Such an argument is completely without legal merit.

As mentioned in the preceding section, Stone does not have continuous and systematic contacts with the forum; he ended his business in the forum over twenty-eight years ago and has

lived and worked out of South Florida since the early 2000s. Stone does not have minimum contacts with the forum state that would not offend traditional notions of fair play and substantial justice. *See Alkanai v. Aegis Defense Services, LLC*, 286 F.R.D. 67, 70 (D.D.C. 2012) (holding that Due Process requires that for a claim arising outside of the forum, the non-resident defendant must have had "continuous and systematic" contacts with the forum to be subjected to jurisdiction in the forum) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)). None of the alleged conduct occurred within D.C., the alleged injury was not felt in D.C., nor was the alleged conduct directed towards D.C.

Plaintiffs incorrectly attempt to use the case law from *Keeton v. Hustler, Inc.,* 465 U.S. 770 (1984), to support his claim that this Court has personal jurisdiction over Stone. Stone is not a magazine publisher, nor any kind of publisher. Stone is not publishing material that is sold or distributed nationwide nor is he a corporation. He is an individual who works as a political commentator. None of the purported defamatory statements were published in print; in fact, just because an individual may access a website here where an alleged defamatory was made does not equate to personal jurisdiction. *See GTE New Media Services, Inc., v. BellSouth Corp.,* 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District."). In *Kline v. Williams*, this Court found that, "[a]lthough the allegedly defamatory posts … were accessible to Internet users within the District there is nothing in her pleadings that indicates she 'suffered any injury in the District of Columbia that [she] could not have suffered in any state in the nation where someone may have read the messages and reacted negatively towards [her].'" 2006 WL 758459, at *3 (D.D.C. 2006) (quoting *Mallinckrodt Medical, Inc. v. Sonus Pharm., Inc.*, 989 F.Supp. 265, 273 (D.D.C. 1989) (finding

no personal jurisdiction although a posting was accessible to a number of AOL subscribers in the District because the injury felt in the forum was indistinguishable from that felt anywhere else subscribers lived). "In cases involving the postings of infringing material on an Internet website, courts have held that the tort occurs where the web site is created and/or maintained, usually where the server supporting the web site is located, not where the Internet website can be seen, because that would be literally anywhere the Internet can be accessed." *Id*. (quoting *Cable News Network v. GOSMS.COM, Inc.,* 2000 WL 1678039, at \*3 (S.D.N.Y. 2000)).

### 1.  This Court Does Not Have General Jurisdiction over Stone.

Stone is domiciled in the state of Florida. For purposes of general jurisdiction, the Court must consider where the defendant is domiciled.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.") (quoting *Goodyear*, 564 U.S. at 924 (2011)). His principal place of business is also located in Florida. *See Xie v. Sklover & Company, LLC*, 260 F.Supp.3d 30, 39 (D.D.C. 2017) ("Under D.C. law, there is general jurisdiction over a defendant who is 'domiciled in, organized under the laws of, or maintaining his or its principal place of business in' the District.")  (quoting D.C. Code § 13-422). Stone has no current connection to his former lobbying firm and has not been associated with the firm since 1991. This Court does not have general personal jurisdiction over Stone, nor have Plaintiffs made any statements regarding general personal jurisdiction other than conclusory statements and bare allegations. Simply because Stone was involved in Trump's presidential campaign does not mean he was engaging in business in Washington, D.C. In fact, as noted in previous sections, the headquarters for the Trump Campaign were located in New York City and domiciled in Virginia and not in Washington, D.C.  Plaintiffs' jurisdiction allegations fall decidedly flat in light of this fact.

### 2.   This Court Does Not Have Specific Jurisdiction over Stone.

Critically, Plaintiff fails to analyze some of the most important cases involving specific jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."[4] *Walden v. Fiore*, 51 U.S. at 284-285 (citations omitted) (internal quotation marks omitted). A court has specific jurisdiction only if (1) the defendant has "purposefully established minimum contacts" with the forum by "purposefully direct[ing]" his activities there and (2) the plaintiff's claims "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-474 (1985). Plaintiff must allege specific acts connecting a defendant to the forum. *See Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 525 (D.C. Cir. 2001)*.* The allegation that Stone has "defamed, threatened, and discredited" Plaintiffs (*see* Opp. 8), because Stone is allegedly trying to influence the Mueller investigation is insufficient. Plaintiff cannot assert a claim for something that the defendant could not do. Plaintiffs claim that all of these actions stem from Stone's attempts "to try to improperly influence and corrupt Mueller's investigation and now prosecution." Opp. 1. Plaintiffs failed to allege a single instance where Stone engaged in such behavior. There is absolutely nothing in the Complaint that supports this theory of Stone actively trying to use his access to partisan or fringe media outlets to undermine the Mueller investigation and prosecution. As the Court must recognize, the Mueller Report has been published. There are no allegations that Stone attempted to influence the substance of the Report.

---

[4] A "defendant's relationship with a plaintiff or third-party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). "Due process requires that a defendant be hauled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id*. (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

II.     **Stone's Agency Argument is Not a "Red Herring"**

In Plaintiffs' Opposition, they make an argument that they failed to raise in the Complaint –

this argument is improper because it was not originally plead in the Complaint and Plaintiffs have

failed to amend their Complaint. The Federal Rules of Civil Procedure do not allow Plaintiffs to

continue making allegations of tortious behavior after the Complaint has been filed unless the

Court gives leave to file an Amended Complaint, which has not happened here. Conspiracy has

not been properly pled and therefore any arguments that this Court has personal jurisdiction over

this action because of the improperly alleged conspiracy fails. *See* Opp. at 9-10. Stone and Caputo

are not co-conspirators engaged in a conspiracy to ruin the lives of Plaintiffs; such a notion is not

based on fact, nor has it been properly pled. Just because Plaintiffs themselves are well-known

conspiracy theorists, does not mean that the rest of the world is too. Plaintiffs would have this

Court believe that there is some grand plan between Defendants Stone, Caputo, and other unnamed

"surrogates" or "agents" acting on behalf of Stone to ruin the lives of Plaintiffs. This is beyond

far-fetched and as discussed in Section C, does not even meet the relatively low burden of properly

pleading a cause of action.

Furthermore, as Plaintiffs clearly state, Stone is legally prohibited from "using surrogates as

ordered by the Judge in his federal case." They have provided nothing more than bare allegations

to support this preposterous notion that Stone is a puppet master controlling Caputo's strings.

Plaintiffs are essentially alleging that friendship and mentorship equates surrogacy – which is an

illogical assumption at best. Additionally, as noted by the Supreme Court, "'a defendant's

relationship with a…third party, standing alone, is an insufficient basis for jurisdiction.'" *Bristol-*

*Myers Squibb Co. v. Superior Court of California, San Francisco Cty*, 137 S.Ct. 1773, 1781 (2017)

(citing *Walden*, 571 U.S. at 286).

Besides the fact that Plaintiffs have improperly pled conspiracy between the Defendants, such an argument would fail based on the requirements of case law.

> 'Courts in this Circuit…have applied the test for co-conspirator jurisdiction 'warily' in order 'to prevent a broad extension of long-arm jurisdiction.'" As a result, the D.C. Circuit requires that the plaintiff 'plead *with particularity* the conspiracy as well as the *over acts within the forum* taken in furtherance of the conspiracy' in order to establish conspiracy jurisdiction over a defendant. This particularity requirement is 'strictly enforced.' Judge Mehta's opinion addressed the implications of *Walden*, and concluded that 'following *Walden*, a plaintiff who seeks to establish jurisdiction over a defendant based on a co-conspirator's contacts must plead, at a minimum, that the defendant *knew* his co-conspirator was carrying out acts in furthers of the conspiracy *in the forum*.'

*Cockrum v. Donald J. Trump for President, Inc.*, 319 F.Supp.3d 158, 185-6 (D.D.C. 2018) (internal citations omitted) (emphasis in original); *see also EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.,* 246 F.Supp.3d 52, 90-1 (D.D.C. 2017). Plaintiffs have clearly failed to meet this particularity requirements as well as failing to adequately allege a conspiracy in their Complaint.

## III.   Stone's Motion to Dismiss Must Be Granted Under Fed. R. Civ. P. 12(b)(6)

### A.  Legal Standard

A complaint must be dismissed if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The court is not "'bound to accept as true a legal conclusion couched as a factual allegation,' or to 'accept inferences drawn by plaintiff if such interferences are unsupported by the facts set out in the complaint.'" *Trudeau v. Federal Trade Com'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citations omitted) quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Applying the *Iqbal* standard in this case, it is abundantly clear that the Plaintiffs' allegations of defamation and defamation by implication distress fall short in crossing the line from "conceivable" to the "plausible" as Plaintiffs allege unfounded and conclusory claims unsupported by facts. Indeed, Plaintiffs' Complaint, Opposition (Doc. 9), and Declaration (attached to Opposition) (Doc. 9-1) are riddled with outlandish and groundless accusations against Mr. Stone. As discussed below, the allegations are implausible because they do not provide any legitimate basis of the claims asserted, they rely on an assumption of guilt based on an on-going criminal prosecution, and misconstrue statements made about non-party individuals as the basis of tortious conduct against Plaintiffs.

Plaintiffs cite to *Dimick v. Schiedt*, 293 U.S. 474 (1935) to support their claim that discovery is absolutely necessary in a defamation case, yet that case had absolutely nothing to do with defamation. The issue in that case was regarding whether or not a district court could increase an award amount fixed by a jury verdict and whether an individual's Seventh Amendment right to trial by jury was violated when the district court modified the jury award. *Id.* This case is completely inapplicable to the facts at hand and is seriously misapplied by Plaintiffs in their Opposition at page 11. Plaintiffs proceed to base the rest of their argument on cases that are neither relevant nor binding in this jurisdiction. Plaintiffs cite to a case regarding summary judgment (Opp. at 11) to support their argument, but in order to even get to the summary judgment face, the Plaintiffs must properly state a claim upon which relief can be granted to proceed to discovery.

## B. Plaintiffs Did Not Properly Plead Claims for Defamation and Defamation by Implication

Plaintiffs fail to allege or attribute any of the allegedly defamatory statements to Stone's conduct; they merely claim that Stone and Caputo have been friends for a long time (Opp. at 9)

and that Stone apparently uses surrogates to act on his behalf, without actually providing any factual support to such an allegation. Opp. at 4.  In fact, every statement cited in the Complaint was made by Defendant Caputo without any influence or direction from Stone. Perhaps most importantly, none of the statements made by Caputo can be classified as defamatory statements under the standard set under the law of the District of Columbia. It should also be noted that none of the statements made by Caputo make any mention of Plaintiff Klayman; he briefly mentions Plaintiff Corsi in a larger conservation about the Mueller investigation.

Plaintiff Klayman's claims lack any merit whatsoever. He has failed to allege any statements made by Caputo and/or Stone that relate to him. The two alleged instances of defamation are statements regarding Plaintiff Corsi – there is no mention of Klayman whatsoever. Klayman asserts that because his client Jerome Corsi was injured, he was also injured. That is nowhere near sufficient to meet the pleading requirements of the Federal Rules of Civil Procedure. Such a statement is a textbook example of a bare and conclusory statement with no factual basis or support. Klayman rests his entire defamation allegation on the premise that the purported defamation against his client, Jerome Corsi, somehow equates to defamation against Klayman himself, even though he fails to plead a single instance of defamatory conduct directly relating to him.[5]

"[I]n a defamation case the plaintiff has the burden of proving that the challenged statements are both false and defamatory." *Kendrick v. Fox Tele.,* 659 A.2d 814, 819 (D.C. 1995).

---

[5] *See* Compl. ¶ 34. ("These false, malicious and defamatory statements are meant to defame and discredit Plaintiff Corsi, who is a well-known conservative [sic] figures and media personality, *and by extension, Plaintiff Corsi's attorney, Mr. Klayman who it is understood by viewers and listeners to have worked with Corsi* 'to give information that they were looking for, probably on Roger Stone.'") (emphasis added). Furthermore, this assumption that viewers know who Klayman is, is preposterous and clearly not based on any provable information.

Additionally, a plaintiff asserting a defamation claim "must specifically 'plead the time, place, content, speaker, and listener of the alleged defamatory matter.'" *Franklin v. Pepco Holdings, Inc.,* 875 F.2d 66, 75 (D.D.C. 2012), (quoting *Stovell v. James*, 810 F.Supp.2d 237, 248 (D.D.C. 2011)). The Supreme Court has noted "'imaginative expression' and 'rhetorical hyperbole' are not actionable in defamation because 'they cannot reasonably be interpreted as stating actual facts about an individual.'" *Ford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596-7 (D.C. 2000), (quoting *Milkovich v. Lorain Journal Co.*, 491 U.S. 1, 2 (1990)).

Defamation is not a one-size-fits-all claim. There are different standards used to view defamatory statements depending on whether the individual alleging defamation is a full public figure, a limited public figure, or a private individual. [6]   As discussed below and based on the language used by Plaintiff Corsi himself, it appears that Corsi views himself as a limited public figure as does Klayman. (*See* Complaint ¶¶ 1,2).  The District of Columbia Circuit has formulated a three-pong test to determine whether an individual is a limited-purpose public figure:

> First, the Court must determine whether a public controversy existed. This assessment requires the Court to determine whether there was a dispute that in fact had received public attention because its ramifications would be felt by persons who were not direct participants. Second, the Court must analyze the plaintiff's role in the controversy. Trivial or tangential participation is not enough…to be considered a limited-purpose public figure, a plaintiff must have achieved special prominence in the debate. To satisfy the special

---

[6] "There are two types of public figures: (1) general public figures who maintain such status for all purposes and (2) limited-purpose public figures "'(who) voluntarily inject[ ] [themselves] or [are] drawn into a particular public controversy and therefore become[ ] ... public figure[s] for a limited range of issues." ' *Id.* at 1292 (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351, 94 S. Ct. 2997, 41 L.Ed.2d 789 (1974)). "A person becomes a general purpose public figure only if he or she is 'a well-known celebrity,' his name a 'household word.'" *Tavoulareas v. Piro,* 817 F.2d 762, 772 (D.C.Cir.1987) (en banc) (citation omitted). "Few people," however, "attain the general notoriety that would make them public figures for all purposes." *Waldbaum,* 627 F.2d at 1296. Much more common are "public figures for the more limited purpose of certain issues or situations." *Tavoulareas,* 817 F.2d at 772. *Jankovic v. Int'l Crisis Group,* 72 F. Supp. 3d 284, 300 (D.D.C. 2014), *aff'd,* 822 F.3d 576 (D.C. Cir. 2016).

prominence requirement, the plaintiff either must have been purposely trying to influence the outcome or could realistically have been expected, because of his position in the controversy, to have an impact on its resolution. Finally, the Court must assess whether the alleged defamation was germane to the plaintiff's participation in the controversy.

*Jankovic v. Int'l Crisis Group*, 72 F.Supp.3d 284, 301 (D.D.C. 2014) [internal citations omitted]. In assessing the first prong, a public controversy exists when "the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy." *Walbaum v. Fairchild Publications, Inc.,* 627 F.2d 1287, 1297 (D.C. 1980). A plaintiff meets the second prong of the limited-public figure test when he "use[s] the public controversy to do more than provide a 'short-simple statement of his view of the story,' and instead '[draws] attention to himself' and use[s] 'his position in the controversy as a fulcrum to create public discussion.'" *Jankovic,* 72 F.Supp.3d at 271, quoting *Clyburn v. New World Commc'ns, Inc.,* 903 F.2d 29, 32 (D.C.Cir. 1990). As to the final prong, "'[m]isstaments wholly unrelated to the controversy' are not protected, but statements, including those highlighting a plaintiff's talents, education, experience, and motives,' can be germane." *Id.* at 272, quoting *Walbaum.,* 627 F.2d at 1298. The cornerstone of this inquiry is "whether an individual has assumed [a] role [] of especial prominence in the affairs of society…[that] invite[s] attention and comment." *Lohrenz v. Donnelly,* 350 F.3d 1272, 1279 (D.C. Cir. 2003) (quoting *Tavoulareas v. Piro,* 817 F.2d 762, 773 (D.C. Cir. 1987)). Private individuals become limited-purpose public figures when they have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345 (1974).

The Court set the dividing line between public and private figures based on those who assumed the risk of publicity and had access to channels of communication to defend themselves, and those who did not. Indeed, *the communications media are entitled to act on the assumption that public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them* whereas a private individual has relinquished no part of his interest in the protection of his own

good name, and consequently he has a more compelling call on the courts for redress of
injury inflicted by defamatory falsehood.

*Jankovic v, Int'l Crisis Group,* 822 F.3d 576, 584-585 (D.C. 2016) (internal citations and
quotations omitted) (emphasis added).

The First Amendment requires that there be a high bar for public figures to prevail on a
defamation claim. *See New York Times, Co. v. Sullivan*, 376 U.S. 254, 270 (1964). "A statement
of opinion is actionable only if it has an explicit or implicit factual foundation and is therefore
'objectively verifiable.'" *Washington v. Smith*, 80 F.3d 555, 556 (D.C.Cir. 1996), quoting
*Milkovich,* 497 U.S. at 22.

The statements made by Caputo and attributed to Stone do not amount to defamation. The
public controversy in this case involves the Office of Special Counsel, Robert Mueller's
investigation into possible Russian interference in the 2016 Presidential election. This
investigation is wide-ranging and has ramifications far beyond just the individuals being
investigated, but also for the nation as a whole. All of the alleged claims of Plaintiffs' Complaint
center around the larger public controversy surrounding Mueller's Russia investigation. As to the
second prong, Corsi has made multiple public statements regarding his and Mr. Stone's
involvement in the Mueller investigation, statements that are not a 'short-simple statement of his
view of the story,' in fact, he has written a book publicly discussing his involvement in Mueller's
investigation, including Corsi's involvement as it relates to Mr. Stone.[7] The alleged defamatory
statements are germane to the Plaintiffs' involvement in this public controversy. These purported
defamatory statements made by Caputo were in response to questions asked on a political talk
show relating to the Mueller investigation. Furthermore, all statements were based on Caputo's

---

[7] Jerome R. Corsi, Ph.D., Silent No More: How I Became a Political Prisoner of
Mueller's "Witch Hunt," (2019), available at https://www.simonandschuster.com/books/Silent-
No-More/Jerome-R-Corsi/9781642932171.

opinion and his view of the situation, not on some firm factual basis; it was all speculation about what was to come when the Report would be released. Given these facts, Plaintiff Corsi has satisfied the limited-public figure test and consequently, Caputo's comments do not amount to defamation.

There is nothing contained in Plaintiffs' allegations that demonstrate that any of the allegedly defamatory statements were made with malice and with the knowledge that they were false and misleading. Both Caputo and Stone are individuals who are well known for speaking their minds on a number of issues, particularly their personal views and opinions on political matters. This is not defamation.

Furthermore, Plaintiff attempts to attribute statements made by third parties to Mr. Stone in an attempt to bolster his lackluster allegations of defamation. Plaintiff Corsi fails to provide a single instance of Mr. Stone employing and directing these alleged "surrogates" to make defamatory statements about Plaintiff in his complaint. *See* Complaint ¶ 13.

## **<u>CONCLUSION</u>**

This Court should dismiss the Complaint for lack of personal jurisdiction. Alternatively, it should dismiss the complaint for failure to state a claim.

Dated: June 19, 2019                                      Respectfully submitted,

                                                          */s/* _____

ROBERT C. BUSCHEL                                         CHANDLER ROUTMAN
BUSCHEL GIBBONA, P.A.                                     D.D.C. Bar No. 1618092
D.D.C. Bar No. FL0039                                     501 East Las Olas Blvd., Suite 331
One Financial Plaza, Suite 1300                           Fort Lauderdale, FL 33301
100 S.E. Third Avenue                                     Tele: 954-235-8259
Fort Lauderdale, FL 33394                                 routmanc@gmail.com
Tele: 954-530-5301
Fax: 954-320-6932

Buschel@BGlaw-pa.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 19, 2019, I electronically filed the foregoing with the

Clerk of Court using CM/ECF. I also certify that the foregoing is being served this day on all

counsel of record or pro se parties, via transmission of Notice of Electronic Filing generated by

CM/ECF.


Larry E. Klayman
KLAYMAN LAW GROUP, P.A.
2020 Pennsylvania Ave NW # 800
Washington, DC 20006
leklayman@gmail.com

*Counsel for Plaintiffs*