## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DR. JEROME CORSI et al,

                    Plaintiffs,

  v.                                    **Civil Action No. 19-cv-1573-TJK**

MICHAEL CAPUTO et al,

                    Defendants.

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT MICHAEL CAPUTO'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION AND RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

Dated: July 18, 2019

        Respectfully submitted,

                                      /s/ Dennis C. Vacco
                                      Dennis C. Vacco
                                      Scott S. Allen, Jr.
                                      Lippes Mathias Wexler Friedman LLP
                                      *Attorneys for Michael Caputo*
                                      50 Fountain Plaza, Suite 1700
                                      Buffalo, New York 14202
                                      dvacco@lippes.com
                                      sallen@lippes.com
                                      (716) 853-5100

**Preliminary Statement**

On April 8, 2019, Plaintiff Dr. Jerome Corsi and Larry Klayman, Esq. filed the subject Complaint alleging that Defendants Michael Caputo and Roger Stone defamed Corsi and Klayman. On June 6, 2019, Mr. Caputo moved to dismiss the Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Dkt. 5. On July 2, 2019, Mr. Klayman voluntarily dismissed the causes of action in this matter "ONLY as to claims brought by Plaintiff Klayman." Dkt. 13. Accordingly, Dr. Corsi is the only Plaintiff remaining.

On July 11, 2019, Plaintiff filed a Response in Opposition to Mr. Caputo's Motion to Dismiss. Dkt. 14. As detailed below, this Court lacks personal jurisdiction over Mr. Caputo, a resident of New York State, who neither committed a tortious act nor conducts substantial business in this District, engages in persistent conduct in this District, or derives substantial revenue from services rendered in this District (*see* § 13-423(a)). Moreover, Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, Mr. Caputo respectfully submits that this Court must dismiss the Complaint in its entirety.

**Argument**

**I.     This Court lacks personal jurisdiction over Mr. Caputo.**

For the first time, Plaintiff alleges that the District of Columbia Long-Arm Statute is satisfied here under D.C. Code § 13-423(a)(1) [transacting any business in the District of Columbia] and § 13-423(a)(4) [causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia]. Dkt. 14 at 2. Notably, Plaintiff does *not* assert

personal jurisdiction under § 13-423(a)(3) [causing tortious injury in the District of Columbia by an act or omission in the District of Columbia]. *See* Dkt. 14.

To establish long-arm jurisdiction here, Plaintiff must show that it is both authorized by § 13-423 and consistent with due process. *E.g., Holder v. Haarmann & Reimer Corp.,* 779 A.2d 264, 269 (D.C. 2001).  Plaintiff cannot make either showing.

### a.  Mr. Caputo does not have sufficient contacts to the District under § 13-423(a)(4).

Plaintiff cannot establish personal jurisdiction under § 13-423(a)(4).  In addition to the alleged injury, subsection (a)(4) requires Plaintiff to demonstrate sufficient contacts to the District, including activities of a "continuous nature." *Parsons v. Mains*, 580 A.2d 1329, 1330 (D.C. 1990). Here, Plaintiff specifically alleges that Mr. Caputo "conduct[s] substantial business and services in the District…." (Dkt. 14 at 4), but the Complaint fails to allege regular business transactions necessary to establish continuous contacts to the District.  Indeed, Mr. Caputo's affidavit (Dkt. 5-2) proves he does not conduct regular business activities in the District of Columbia. *See Novak-Canzeri v. Al Saud*, 864 F.Supp. 203, 206 (D.D.C. 1994)("the Court must accept Plaintiff's claims as true in ruling on a 12(b)(2) motion, unless they are directly contradicted by an affidavit.").

The D.C. Court of Appeals' decision in *Parsons* illustrates the ongoing, substantial nature of the contacts necessary to satisfy subsection (a)(4). The plaintiff there sued for breach of contract and conversion. *Id.* at 1329. The plaintiff asserted personal jurisdiction over the defendant, a Virginia attorney, based on subsection (a)(4). *Id.* The defendant attorney had previously entered appearances, as counsel, in three cases in the District. *Id.* at 1330. Two of the prior cases in which defendant had appeared were pending at the time of the plaintiff's suit. *Id.* Moreover, in at least two of those cases, the defendant was lead counsel. *Id.* The Court in *Parsons* nonetheless held that the defendant's contacts did not

satisfy subsection (a)(4). *Id.* Although the defendant attorney in that case had made appearances in multiple cases in the District, his contacts fell short of the "continuous and persistent course of business" that subsection (a)(4) requires. *Id.*

Mr. Caputo has even fewer connections to the District than *Parsons* did. Indeed, the allegations within the Complaint are replete with conclusory, tenuous, and sometimes misleading attempts to connect Mr. Caputo to D.C. For instance, in Paragraph 5, Plaintiff alleges that Mr. Caputo "has worked on numerous presidential and other political campaigns in the District of Columbia," but fails to give any specifics, including whether Mr. Caputo was present in the District while working on those campaigns. In paragraph 7, Plaintiff alleges that "[m]ost recently, Defendant Caputo served as an advisor to President Donald Trump during the 2016 presidential election," but omits that Mr. Caputo did so in his capacity as Communications Director for President Trump's 2016 *New York State* Campaign, working mostly from Trump Tower in Manhattan and from his home near Buffalo, New York. Dkt. 5-2, ¶12. Notably, Mr. Caputo resigned from the Trump Campaign in June 2016. *Id.*, ¶13; *see Walden v. Fiore*, 571 U.S. 277, 285 (2014) (Jurisdictional analysis "looks to the defendant's contacts with the forum … itself, not the defendant's contacts with persons who reside there."). And in paragraph 10, Plaintiff alleges that Mr. Caputo "does substantial business in the District of Columbia and derives a significant portion of his income from the District of Columbia," a false statement in every respect. Dkt. 5-2., *¶5-7*. As evidenced by paragraph 9 of Dkt. 5-2, Mr. Caputo only worked for Rainmaker Interactive, which was located in Reston, Virginia, for a period of 19 months between 2000 and 2001, so Plaintiff's assertion that Mr. Caputo's professional conduct is "centered around the District of Columbia" (Dkt. 14 at 3) is unfounded. Accordingly, Plaintiff fails to establish jurisdiction under subsection (a)(4).

Notably, this is not Mr. Klayman's first time filing a defamation suit in which the defendant has a tenuous connection to the District.  In *Forras v. Rauf*, 812 F.3d 1102 (D.C. Cir. 2016),[1] Mr. Klayman brought a defamation action against a New York resident whose statement was published in the *New York Times*.  In affirming the District Court's dismissal, Circuit Judge Millett wrote, "[t]he statute [§ 13-423(a)(4)] requires both an injury inside the District, and that 'the defendant engages in some persistent course of conduct or derives substantial revenue from the District.'" *Forras,* 812 F.3d at 1107-08 (*citing Moncrief*, 807 F.2d at 221).  The Circuit Court found that "a publication that is circulated throughout the nation, including the District, hardly constitutes doing or soliciting business, or engaging in a persistent course of conduct, *within* the District." *Id.*

Nearly identical circumstances exist in this case.  Plaintiff's attempt to connect Mr. Caputo to the District because he often appears on nationally syndicated broadcasts is feeble. *See* Complaint, ¶9 ("Defendant Caputo frequently appears on television as a political media personality and commentator broadcast in this district….").  Mr. Caputo does not regularly do business in the District, nor does he engage in a persistent course of conduct in the District. Therefore, this Court lacks personal jurisdiction over Mr. Caputo under subsection (a)(4).

**b.  Plaintiff cannot establish personal jurisdiction under § 13-423(a)(1).**

This Court should decline to construe subsection (a)(1)'s "transacting business" provision to authorize personal jurisdiction in tort cases such as the present case where it would not otherwise be authorized by the tort provisions in subsection (a)(4). *Alkanani v. Aegis Def Servs., LLC,* 976 F. Supp. 2d 13, 27 (D.D.C. 2014).  As explained immediately above, Plaintiff cannot establish the "transacting business" clause of § 13-423(a)(4), so Plaintiff's attempt to establish personal

---

[1] Klayman first filed that action in the Superior Court, *Vincent Forras & Larry Klayman v. Iman Feisal Abdul Rauf & Adam Leitman Bailey*, Civil Action No. 0008122-11 (Hon. Todd E. Edelman, J.), but voluntarily dismissed the action and re-filed in Federal District Court. *Forras,* 812 F.3d at 1104.

jurisdiction under § 13-423(a)(1) must also fail.  Indeed, even if Plaintiff was not precluded from

using subsection (a)(1) to establish personal jurisdiction in this case, as explained immediately

above, Mr. Caputo lacks sufficient business contacts to the District to prevail.

   c.  **Due Process forbids the exercise of personal jurisdiction over Mr. Caputo.**

   Exercising personal jurisdiction over Mr. Caputo based upon his limited contacts with the

District would violate due process because it would not comport with "traditional notions of fair

play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945).

Indeed, Plaintiff's attempts to tie Mr. Caputo to the District in Paragraphs 5 through 10 of the

Complaint are premised on weak and untargeted connections. *See Shirlington Limousine &*

*Transp., Inc. v. San Diego Union-Tribune,* 566 F. Supp. 2d 1, 5 (D.D.C. 2008) ("mere operation

of an Internet site does not alone subject a defendant to jurisdiction in all fora in which content can

be accessed, and plaintiffs must support jurisdictional arguments with more than vague

assertions.").

   In support of his argument that personal jurisdiction over Mr. Caputo is consistent with due

process, Plaintiff relies upon *Keeton v. Hustler, Inc.*, 465 U.S. 770 (1984). Dkt. 14 at 5.  However,

this case is different from *Keeton* in that the Court relied upon *Hustler*'s regular monthly

circulation of as many as 15,000 magazines in the forum state in finding that *Keeton* sufficiently

established jurisdiction. *Id.* at 772-74.  Here, Mr. Caputo's minimal contacts to the District are

neither periodic nor as significant as those in *Keeton.*

   Similarly, personal jurisdiction is not supported by *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462 (1985).  Here, there is zero evidence that Mr. Caputo

"purposefully directed" his statements to the District specifically, despite Plaintiff's

speculation and conclusory attempt to connect Mr. Caputo's statements to Plaintiff's credibility and Mr. Stone's potential jury pool. *See* Complaint, ¶21, 23, 24, 28.

Consequently, Plaintiff has failed to show that personal jurisdiction over Mr. Caputo is consistent with due process, and therefore, the Complaint must be dismissed.

**II.       Plaintiff fails to state a claim upon which relief can be granted.**

"[T]he Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.,* 856 F.3d 106, 109 (D.C. Cir. 2017). Doing so "not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Fairbanks v. Roller,* 314 F. Supp. 3d 85, 89 (D.D.C. 2018).

In screening defamation claims under Rule 12(b)(6), the Court must "accept the allegations of the complaint as true, and construe all facts and inferences in favor of the plaintiff." *Solers, Inc. v. Doe,* 977 A.2d 941, 947 (D.C. 2009). But the Court must ignore "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Potomac Dev. Corp. v. District of Columbia,* 28 A.3d 531, 544 (D.C. 2011) (internal quotation marks omitted). The remaining allegations of the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)).

Under District of Columbia law, a defamation claim requires: (1) a false and defamatory statement; (2) published without privilege to a third party; (3) made with the requisite fault; and (4) damages. *Beeton v. District of Columbia,* 779 A.2d 918, 923 (D.C. 2001). The First Amendment requires "public figures" to bear heightened burdens in pleading and proving falsity and fault. *Liberty Lobby, Inc. v. Dow Jones* & Co., *Inc.,* 838 F.2d 1287, 1292 (D.C. Cir. 1988). Public figures are people who "have assumed roles of special prominence in the affairs of society." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974)("Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classified as public figures…"). Public figures must plead and prove falsity "by at least a fair preponderance of the evidence," with close cases decided against them. *Id.* In addition, public figures must plead and be able to prove by clear and convincing evidence that the defendant's fault constituted "actual malice." *Id.* "Actual malice" means that the defendant made the alleged defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *N. Y. Times v. Sullivan,* 376 U.S. 254, 280 (1964). Reckless disregard, in turn, requires a "high degree of awareness of ... probable falsity." *Garrison v. Louisiana,* 379 U.S. 64, 74 (1964).

Plaintiff must meet the heightened burdens of pleading and proving falsity and fault because, at minimum, Plaintiff is a limited purpose public figure. If "an individual voluntarily injects himself or is drawn into a particular public controversy[, he] thereby becomes a public figure…." *Abbas v. Foreign Policy Group, LLC,* 975 F.Supp.2d 1, 7 (D.D.C. 2013)(*quoting Gertz*, 418 U.S. at 351). The Complaint establishes that Plaintiff is, at minimum, a limited purpose public figure (Complaint, ¶1 ("Plaintiff Dr. Jerome Corsi is an author and political commentator who publishes works in this judicial district

and nationwide."); Complaint, ¶34 ("well-known conservative figures [*sic*]")) who was the topic of conversation on a nationally syndicated television show on March 29, 2019. *See Braden v. News World Commc'ns, Inc.*, No. CA-10689'89, 1991 WL 161497, at \*1 (D.C. Super. Ct. Mar. 1, 1991) (Court labels cable news political commentator a public figure).  Contrary to Plaintiff's assertion, nobody "forced [Plaintiff] to make public statements in order to protect his own investigation." Dkt. 14 at 9.  Similarly, Plaintiff's assertion that Plaintiff "never sought out any of the media attention" (*id.*) is preposterous. Rather, Plaintiff was the topic of conversation on a nationally syndicated television show because he has voluntarily injected himself into the media throughout the time period of the Mueller Investigation.[2]

Plaintiff cannot meet his heightened burden with the two specific defamatory statements alleged (previously omitted language now included in bold):

1. "[T]he Mueller team finds themselves at the end of the hallway … and they're staring at Jerry Corsi, who believes the most wild conspiracies in the world**, Roger Stone, and Randy Credico who wears women's underwear … and** they end at the freak show tent." Complaint, ¶31.

2. "[H]e could be the luckiest man in the world.  I think he should buy a lottery ticket or ten.  I'm surprised. I also believe that it indicates that Corsi gave them information that they were looking for, probably on Roger Stone.  We'll probably see him brought in as a witness in Roger Stone's trial. Complaint, ¶32.

a. **Mr. Caputo's first comment was not defamatory because it was rhetorical hyperbole.**

"[I]f it is plain that a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Guilford Transp. Indus. v. Wilner,* 760 A.2d 580, 597 (D.C. 2000).

Moreover,

---

[2] *See e.g.* https://www.youtube.com/watch?time_continue=246&v=lxktpvl5fjY

the First Amendment provides protection for "statements that cannot 'reasonably [be] interpreted as stating actual facts about an individual." *Milkovich* [*v. Lorain Journal Co.,* 497 U.S. 1, 20, 110 S.Ct. 2695 (1990)] (quoting *Hustler Magazine v. Falwell,* 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988)). In deciding whether a reasonable factfinder could conclude that a statement expressed or implied a verifiably false fact about appellant, the court must consider the statement in context. *Moldea* [*v. New York Times Co.*,] *II,* 22 F.3d [310] at 313–15 [(D.C.Cir. 1994)]. "This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695 (quoting *Hustler Magazine,* 485 U.S. at 53–55, 108 S.Ct. 876).

*Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001).

Mr. Caputo's first statement is pure conjecture, surmise, and rhetorical hyperbole. Indeed, the statement was made in conjunction with Mr. Caputo's comment about Randy Credico wearing women's underwear during a political exchange, and no reasonable factfinder could interpret this as stating an actual fact. In *Greenbelt Cooperative Publishing Assn., Inc. v. Bresleer,* 398 U.S. 6, 90 (1970), the Supreme Court held that a local news reporter's characterization of a real estate agents negotiations during heated public meetings as "blackmail" was not defamatory because "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole…." *See also Letter Carriers v. Austin,* 418 U.S. 264, 284-86 (1974)(use of the word "traitor" in literary definition of a union "scab" not basis for a defamation action under federal labor law since used "in a loose, figurative sense" and was "merely rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by union members"). Indeed, Mr. Caputo's comment is the exact "imaginative expression" and "rhetorical hyperbole" contemplated by the Supreme Court several times over.

### b. Mr. Caputo's second comment was likely an accurate opinion.

A public figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 775 (1986). Here,

Plaintiff cannot demonstrate that the second statement is false, or that Mr. Caputo made the statement with knowledge that it was false or with reckless disregard of whether it was false or not. Indeed, it is common knowledge that Government officials interviewed Plaintiff as part of the Mueller Investigation, in part because he discussed his interviews on MSNBC on or about January 23, 2019.[3] During his MSNBC interview, Plaintiff stated that Government officials primarily asked him about Roger Stone.[4] Given the facts that Government officials interviewed Plaintiff, Government officials primarily asked Plaintiff about Roger Stone, Plaintiff testified in Mueller's grand jury,[5] and Plaintiff appeared as Person 1 in Roger Stone's Indictment (Complaint, ¶26), it is indeed probable that Plaintiff gave the Government "information they were looking for" and will be a witness in Mr. Stone's upcoming trial.  Plaintiff even stated as much in his opposition papers. Dkt. 14 at 1 ("Plaintiff Jerome Corsi, who was Person 1 in [Mr. Stone's] indictment and who will likely be subpoenaed and called a material witness …").  Stated differently, Mr. Caputo's comment is likely accurate.

Moreover, as evidenced by Mr. Caputo's use of "I believe" and "probably," Mr. Caputo was clearly stating an opinion.  Importantly, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695 (*Hepps,* 475 U.S. 767 (1986)); *see also Moldea v. New York Times Co.*, 15 F.3d 1137, 1145 (D.C.Cir. 1994)(Such statements are not actionable in defamation "[b]ecause the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts."). In this particular high-profile matter, namely, the

---

[3] https://www.youtube.com/watch?time_continue=246&v=lxktpvl5fjY.  Beginning at 4:54, Mr. Corsi directly states that he spoke to the FBI and Mueller Prosecutors.
[4] *Id.* at approximately 9:00.
[5] *Id.* at 5:11.

Mueller Investigation, Mr. Caputo is entitled to his likely accurate opinion under the First Amendment.

Lastly, to be defamatory, a statement "must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Coles,* 881 F. Supp. at 33 (quoting *Fleming v. AT&T Information Servs., Inc.,* 878 F.2d 1472, 1475-76 (D.C. Cir. 1989)). Here, Plaintiff's allegation is that as a result of Mr. Caputo's statement, Mr. Caputo has "create[d] the false implication that Plaintiffs are not true conservatives and supporters of President Trump …." Complaint, ¶35; *see also* ¶48.  Mr. Caputo's comment in no way makes Plaintiff appear "odious, infamous, or ridiculous."

Indeed, Plaintiff cannot demonstrate by clear and convincing evidence that Mr. Caputo made the two alleged comments with actual malice.  Therefore, Plaintiff fails to state a claim upon which relief can be granted.

## Conclusion

Pursuant to Fed. R. Civ. P. 12(b)(2) and12(b)(6), Defendant Michael Caputo respectfully request that this Court dismiss the Complaint in its entirety.

Dated: July 18, 2019
      Buffalo, New York

**Oral Hearing Requested.**

/s/ Dennis C. Vacco
Dennis C. Vacco
Scott S. Allen, Jr.
Lippes Mathias Wexler Friedman LLP
*Attorneys for Michael Caputo*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
dvacco@lippes.com
sallen@lippes.com
(716) 853-5100

## CERTIFICATE  OF SERVICE

I hereby certify that on July 18, 2019, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

Respectfully submitted,

/s/ Dennis C. Vacco
Dennis C. Vacco
Scott S. Allen, Jr.
Lippes Mathias Wexler Friedman LLP
*Attorneys for Michael Caputo*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
dvacco@lippes.com
sallen@lippes.com
(716) 853-5100